HAGGART, Respondent, v. ALTON et al., Appellants.

(162 N. W. 158.)

(File No. 3805.    Opinion filed April 2, 1917.)

1. **Municipal Corporations—Sewerage Plans, Diagrams, Notice of, Hearing on Objections,—Resolution of Necessity, Designation of District in, System as One District, Plans Disclosing Two, Legality of Adoption of Plans—Statute.**

    "Sewerage Act" (Laws 1903, Chap. 213) Sec. 1, authorizes construction of sewerage systems after division of city into sewerage districts and adoption of plans therefor; Sec. 2 authorizes council to cause diagrams of plans for each district to be prepared; Sec. 3 provides for notice that plans diagram has been prepared and that same may be inspected at time and

place named in notice, and that opportunity will be given for people interested to object, etc.; and sec. 6 provides, among other things, that if the part of the system they may deem it necessary to construct does not constitute the whole of a district, the council shall state "the location and designate all terminal points thereof," and shall give notice of passage of a resolution of necessity therein provided for, from the time of adoption of which resolution the council shall have jurisdiction, etc. The diagram of plans prepared treated the whole system of sewerage comprised therein as a single district, and notice given under Sec. 3 spoke of the system, and described it in detail, as one district. Upon completion of the diagram the council attempted to give notice under Sec. 3, and thereafter they passed a resolution adopting such diagram; the plans in reality disclosing such system divided into two separate and independent parts, as did the attached engineer's statement prepared by him. **Held,** that the steps taken by the council were authorized by and complied with the provisions of Sections 1-3, and resulted in the lawful adoption of plans for a system of sewerage for one district comprising the whole city.

2.   Same—Sewerage Construction—Plans for One District System. Resolution for "First" District—Reference in Resolution to Ordinance Specifying Two Districts, Effect—Statute.

Where, in proceedings for construction of a city sewerage system, the description in the notice of a resolution of necessity which read "A complete sewer system in sewerage district No. 1 of said city, as defined by the provisions of Ordinance No. 5 of said city, entitled 'An ordinance relating to sewerage districts,' approved March 23, 1907, according to the plans and specifications for such sewerage system now on file in the office of the city engineer, and copies of which are now on file" with city auditor, such notice was sufficient, as against one making no claim that he was misled thereby. So **held,** construing Laws 1903, Chap. 213, Sec. 6, requiring, among other things, that the council shall by resolution declare the necessity for construction of sewers, "and shall state the location and designate all terminal points thereof, or the district, if all sewers in the plan" are to be constructed at one time; the objection to said resolution being that it was insufficient under Sec. 6, because the sewerage plans comprised but one district, and the resolution of necessity referred to but part of the system, and referred to it as the "first sewerage district," without designating terminals; such objection being untenable, it appearing that the plans in realty disclosed the system divided into two separate and independent parts, and that the ordinance purported to divide the sewerage system into two districts, in accordance with the real purport of the plans.

3. Same—Sewerage—Special Assessments—Plans for One "District, Invalid Ordinance for Two, Resolution Referring to Ordinance and plans—"Entire Sewerage District," Application of Statute, re Front Foot Assessment—Objection on Appeal, Tenability.

Where, in proceedings for construction of a city sewer, it is objected on appeal that an ordinance, alleged to have been invalid because dividing the system into two districts, while the plans referred to but one, may have rendered the description in the resolution and published notice thereof sufficient to indicate that part of the system deemed necessary to construct, yet that such part was but part of the "district" for which plans had been legally adopted, and that, the sewerage installed being less than that of an "entire sewerage district," under Laws 1903, Chap. 213, Sec. 11, providing that cost of any sewer being for less than an "entire sewerage district" under one contract shall be apportioned among the lots benefited thereby at a uniform rate per front foot without regard to lines of assessment subdistricts provided for in that act, therefore the assessment as made was void; it being undisputed that such assessments were uniform within each subdistrict, but were not at a "uniform rate per front foot" throughout the whole territory covered by the sewerage installed, held, that appellants cannot be heard to raise such objection on appeal; since, even though the ordinance were concededly ineffective to divide the sewerage system into districts, yet appellants were advised by notice of the resolution that there was such an ordinance and that the council was proceeding on the theory that the sewerage to be installed was that of an entire district, and were thus advised that, if the council deemed the benefits unequal throughout such district, it would be their duty to subdivide this assumed district into subdistricts for assessment purposes; that it will be presumed, in absence of contrary evidence, that such division was just and based on conditions justifying and requiring it if, as assumed, the sewerage installed comprised the whole district; it not being claimed that the assessment against appellants' lot was inequitable.

4. Same—Sewers—Special Assessments, Debt and Lien For, Source of, Benefits as, Distinguished From Assessment.

The debt and lien against property assessed for sewerage improvements, do not arise by virtue of the assessment solely, but rather through installation of a public improvement which has benefited such property; the assessment certificate being mere evidence of the authorized determination as to amount of

burden such property should bear in consideration of such benefit.

5. Same—Sewerage—Special Assessments, Uniformity—Remaining Silent, Pending Improvements, Objecting Later, Effect—Statute, Principle of, as Judicial Guide.

. A property owner may not remain silent while a municipality is openly engaged in making a public improvement under vested authority, and, after such improvement has been completed and his property has received benefits therefrom, question, for the first time, the legality of the steps so taken, and, relying upon some failure to comply with strict letter of law, seek to escape his just share of burdens incident to benefits received. So held, in view also of Laws 1903, Chap. 213, Sec. 25, providing that no injunction to restrain proceedings under provisions of that act (Sewerage Act) shall be maintained unless issued prior to making the contract therein provided for, and that in any action to resist payment of any assessment made under its provisions, the court shall disregard all irregularities or defects, whether in proceedings of city council or any corporate officer. So held, in a suit to foreclose lien under an assessment certificate. Smith, J., dissenting.

Appeal from Circuit Court, Brookings County. Hon. Carl G. Sherwood, Judge.

See, also, 29 S. D. 509, 137 N. W. 372.

Action by Gilbert W. Haggart, against Arthur Alton and another, to foreclose the lien claimed under an assessment certificate for sewer benefits. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

*Hall, Alexander & Purdy*, and *Cheever & Cheever*, for Appellants.

*M. E. Culhane*, and *Olaf Eidem*, for Respondent.

(1.) To point one of the opinion, Appellants cited: Haggart v. Alton, 29 S. D. 509, 137 N. W. 372; Laws 1903, Chap. 213, Secs. 1, 2, 3, 6, 9, 11; Bailey v. Sioux Falls, 132 N. W. 703, 28 S. D. 118.

Appellants submitted that: Adoption of a plan of sewerage for the specified district comprising practically the whole city was insufficient to confer jurisdiction upon Council to proceed with an improvement and assess the costs thereof against the property of a taxing district comprising about one-half of the territory contained in the plan of improvement so adopted. That such a change in the identity of the taxing district as was afterwards made can be considered in no other light than that of a material

and vital change in the plan of sewerage; and cited: Angus v. City of Hartford, 49 Atl. 192; State ex rel. City of St. Paul v. District Court, 96 N. W. 737; Page & Jones on Taxation by Assessment, Sec. 743, p. 1283; Sec. 731, p. 1268; Gallaher v. Garland, 101 N. W. 867 (Ia.); Mason v. City of Sioux Falls, 51 N. W. 770; Whittaker v. City of Deadwood, 12 S. D. 608; 82 N. W. 202; 28 Cyc. 1011.

Respondent cited: State v. Mayor (Wis.) 77 N. W. 167; Mason city v. Sioux Falls (S. D.) 51 N. W. 770; Allen v. City of Davenport (Ia.) 77 N. W. 532.

(2) To point two of the opinion, Appellants cited: Johns v. Pendleton, 133 Pac. 817, 46 L. R. A. (N. S.) 990.

Respondent cited: Civ. Code, Sec. 2437; Owens v. City of Marion (Ia.) 103 N. W. 381; Arnold v. City of Ft. Dodge, (Ia.) 82 N. W. 495; Clinton v. Portland, 38 Pac. 407.

(3.) To point three of the opinion, Respondent cited: Chicago R. R. Ry. Co. v. City of Ottumwa, (Ia.) 83 N. W. 1074; Minneapolis Ry. Co. v. Stutsman (S. D.) 154 N. W. 654; Taylor et al., v. Colorado Iron Works (Col.) 80 Pac. 129; Wells v. Supply Co., 96 Wis. 116, 70 N. W. 1071; Hennesy v. Douglas Co., 99 Wis. 129, 74 N. W. 983.

(4.) To point four of the opinion, Respondent cited: Shirk v. Hubb, (Ind.) 78 N. E. 242.

(5.) To point five of the opinion, Appellants cited: Gibson v. Pekarek, 126 N. W. 597; Page & Jones on Taxation by Assessment, Sec. 981, p. 1561.

Respondent cited: Minneapolis Ry. Co. v. Stutsman (S. D.) 154 N. W. 654; McMillan v. Fond du Lac County, (Wis.) 114 N. W. 1119; Nottage v. Portland (Ore.) 58 P. 883.

WHITING, J. Section 1, c. 213, Laws 1903, known as the "Sewerage Act," provides:

"Any city shall have full power to construct systems of sewerage in such manner and under such regulations as the city council shall deem expedient, but shall not enter upon such construction until such city shall have been divided into sewerage districts, nor until a plan shall have been adopted therefor * * *"

Section 2 of such act authorizes the city council to cause diagrams of the plans of sewerage for each sewerage district to be prepared. Section 3 provides for the giving of a notice that the

diagram of plans has been prepared, that the same may be inspected, and that, at a time and place to be named in the notice, an opportunity will be given for the people interested to object to the same. Section 4 provides for a hearing of the objections and authorizes the adoption of the plans by the council if the objections are overruled. Section 5 provides that, when the plans for any sewerage district have been finally determined upon, a complete diagram thereof shall be prepared and filed in the office of the city auditor. Section 6 provides that, when a city has adopted plans under the foregoing sections, and the council shall deem is necessary to construct the system or some part thereof, the council shall by resolution declare the necessity for the system or such part thereof, and, if the part of the system which they may deem it necessary to construct does not constitute the whole of a district, the council "shall state the location and designate all terminal points thereof," and shall give notice of the passage of such resolution and of the time and place where objections to the construction may be filed. Said section further provides that:

"From the time of the adoption of such resolution, the city council shall have jurisdiction to make the improvements therein specified, and assess the cost thereof upon the property benefited thereby, as hereinafter provided."

Then follow numerous sections relating to the letting of contracts for the installation of the system, providing for the payment therefor, and other matters only a few of which are necessary to our present discussion.

The city of Brookings undertook to establish a sewerage system under the provisions of this act. It let a contract, and there was installed a system covering part of such city. Assessment certificates were issued against the several lots within the territory covered by the sewerage installed. A certificate issued against defendant's lot not having been paid, this action was brought to recover the amount due thereon and to forclose the lien claimed under such certificate. Demurrer was interposed to the complaint, such demurrer was overruled, and an appeal taken from the order overruling same. Our opinion on such appeal is to be found in Haggart v. Alton, 29 S. D. 509, 137 N. W. 372, to which reference is made for a statement of the contentions of

the parties and our holdings thereon.   We reversed the trial court, basing such reversal upon the fact that it did not appear that the provisions of sections 1-3 had been complied with.   It appeared from the complaint that the resolution of necessity had been adopted, and that a notice had been given which the plaintiff and respondent contended was sufficient to cover the requirements not only of section 6, but of sections 1-3.   We held that, while the proceedings pleaded were sufficient to show a compliance with the provisions of section 6, they did not comply with the provisions of sections 1-3, and that a compliance with the provisions of such sections was jurisdictional.   Upon the return of this cause to the trial court the complaint was amended so as to set forth proceedings alleged to have been taken under the provisions of said sections 1-3.   The cause proceeded to trial and resulted in findings and judgment for the plaintiff.   From such judgment and from an order denying a new trial this present appeal was taken.

[1] While many assignments have been presented, we are of the opinion that the crucial question before us is as to whether or not such a compliance with the provisions of sections 1-6 was shown as would give to the city council jurisdiction to install the sewerage that was installed, and as would comply with those provisions of the Constitution that forbid the taking of a person's property without due process of law.   Upon the former appeal we held, as hereinbefore noted, that the complaint showed a compliance with section 6 of the act.   The complaint alleged that the resolution adopted thereunder was one declaring the necessity of installing a sewerage system for the "first sewerage district" of said city.   In holding such resolution sufficient under the provisions of section 6 we assumed that the plans were for a system a part of which was designated as "first sewerage district." Under the amended complaint and the evidence submitted in support thereof it appears that the city council had a diagram of plans for a sewerage system for such city prepared; that such diagram treated the whole system as a single district; and that the notice given under the provisions of section 3 spoke of the system as one district and described it in detail as though it were but one district.   Upon the completion of such diagram the council attempted to give a notice under section 3; and thereafter

the council passed a resolution adopting the said diagram of plans.

Appellants question the sufficiency of the steps taken under sections 1-2, the competency and sufficiency of the proof of the publication of the notice given under section 3, the sufficiency of the publication as proven, the competency of the proof of the notice itself, and the legal sufficiency of the notice proven. We have considered all the questions raised, but deem it unnecessary to discuss them in detail. We are of the opinion that the steps taken by the council were authorized by and complied with the provisions of sections 1-3, and resulted in the lawful adoption of plans for a system of sewerage for one sewerage district which district comprised the whole city. These plans disclosed that, in reality, the said sewerage system was divided into two separate and independent parts, one including that part of said city north of the railway running through such city, the other including that part south of such railway. The statement of the engineer who prepared such plans, and which statement was attached to and filed with such plans, declared:

"This practically comprises two main districts, one north of the railway tracks, and one south of same."

[2] But appellants contend that, because the plans adopted were plans for a system comprising but one district, and the resolution of necessity referred to but a part of the system, and, instead of stating its location and designating the terminal points thereof (as provided by section 6), spoke of it as the "first sewerage district," there was not such a compliance with the provisions of section 6 as was necessary in order to give the council jurisdiction to proceed with the installation of such part of the system. The record discloses that, after the adoption of the plans and prior to the giving of the notice of, and adoption of the resolution of necessity, the council passed an ordinance purporting to divide the sewerage system of the city into two districts known as "first sewerage district" and "second sewerage district," which districts conformed to the divisions above noted, the "first sewerage district" comprising the part of the system north of the railway, and the other that part south of the railway. Of course, if this ordinance was valid and had the effect of lawfully dividing the sewerage system into districts, then there can be no question but that

the description contained in the resolution of necessity was ample. Was such description, even though the ordinance did not have the effect of dividing the system into districts, a substantial compliance with the provisions of section 6? The clear purpose of that provision of section 6 which requires, in case the council contemplate installing the system in part of a district only, that the resolution and the notice shall give the terminal points of the part to be constructed, is that the people interested may be apprised of the action contemplated and may take steps to protest if they desire. A description is certain which is capable of being made certain through the examination of records to which it fairly calls one's attention. The full description of the sewerage system as set forth in the notice of the resolution of necessity was:

"A complete sewer system in sewerage district No. 1 of said city, as defined by the provisions of Ordinance No. 5 of said city, entitled, 'An ordinance relating to sewerage districts,' approved March 23, 1907, according to the plans and specifications for such sewerage system now on file in the office of the city engineer, and copies of which are now on file in the office of the city auditor of said city."

We are of the opinion that, inasmuch as one reading this notice would receive therefrom such information as, followed by reasonable investigation, would fully advise him of the boundaries of the proposed work, the notice should be held good at least as against one who makes no claim that he was misled by the description given.

[3] Appellants, however, contend that the ordinance dividing the system into two districts was invalid, and that, although a reference to such ordinance and the plans on file may have rendered the description in the resolution of necessity and notice thereof a sufficient description of the part of the system that the council deemed it necessary to construct, yet such part of the system was but a part of the "district" for which plans had been legally adopted; the sewerage installed being less than that of "an entire sewerage district," the assessment as made was void, and the certificate sued on was invalid. Section 9 of this act provides that the council may divide sewerage districts into sub-districts for purposes of assessment; the basis of division being

that each subdistrict shall contain territory in which "the benefits of such sewerage are uniform and equal." A division was made and the assessments levied were uniform within each subdistrict. But section 11 provides that:

"The cost of any sewer or sewers being for less than an entire sewerage district under one contract shall be apportioned among the lots benefited thereby at a uniform rate per front foot without regard to the lines of assessment subdistricts provided for in this act."

Appellants contend that, the sewerage installed being less than "an entire district," the assessment could only be made at "a uniform rate per front foot without regard to the lines of assessment subdistricts." It is undisputed that the assessments as made were uniform within each subdistrict, but were not at a "uniform rate per front foot" throughout the whole of the territory covered by the sewerage installed.

[4] Appellants cannot be heard to raise this objection to this assessment at this time  Even though it should be conceded that the ordinance by which the council sought to divide the sewerage system into districts was ineffective for that purpose, appellants were advised by the notice of the resolution of necessity that there was such an ordinance. The purport of such ordinance was clear, and appellants had clear notice that the council was proceeding—either rightfully or wrongfully—on the theory that the sewerage to be installed was the sewerage of an entire district. They were thus advised that, if the council thought the benefits to be unequal throughout such district, it would be the duty of such council to subdivide this assumed district into subdistricts for the purposes of assessment. We must presume, in the absence of all evidence to the contrary, that the division into subdistricts for purpose of assessment was just—that it was based upon conditions not only justifying such division, but requiring it if, as assumed, the sewerage installed comprised a whole district. No claim is made that the assessment against appellants' lot was inequitable, nor have appellants sought a new assessment or offered to pay such sum as might be found just. The debt and the lien against appellants' property do not arise by virtue of the assessment solely, but rather through the installation of a public improvement which has benefited such property; the

certificate is the mere evidence of the authorized determination as to the amount of the burden which this property should bear in consideration of such benefit.

[5] We are thus confronted with this situation: The council, after adopting the resolution of necessity, had jurisdiction to install the sewerage; appellants had notice that the council were proceeding under the assumption that the portion to be installed comprised a system for a whole district; appellants, being advised of these facts, and knowing that in due course an assessment based upon benefits received must follow and that such assessment would be uniform within assessment subdistricts if the council thought division into subdistricts necessary to provide uniformity and equality, stood by and allowed the city council to enter into a contract and install the sewerage; it is only when pay day arrives that appellants enter any complaint. It does not behoove one to thus remain silent while a municipality is openly engaged in the making of a public improvement under an authority vested in it, and, after such improvement has been completed and his property has received benefits therefrom, to question, for the first time, the legality of the steps taken by such municipality, and, relying upon some failure to comply with the strict letter of the law, seek to escape his just share of the burdens incident to the benefits received. We fully agree with the following from McCoy v. Able, 131 Ind. 417, 30 N. E. 528, 31 N. E. 453:

"Principle and authority forbid that property owners should be allowed to stand by, inactive and passive, until after the work has been done, and then come in and take from the contractor the value of his work and materials without compensation. For such persons the law has no very tender regard."

That our Legislature desired this principle to guide the courts of this state is evidenced by the provisions of section 25 of this act, which reads in part as follows:

"No injunction to restrain proceedings, under the provisions of this act, shall be maintained unless the same shall be issued prior to making the contract herein provided for. In any action to resist the payment of any assessment or any part thereof made under the provisions of this act, the court shall disregard

any and all irregularities or defects, whether in the proceedings of the city council or any officer of the corporation. * * *"

The judgment and order appealed from are affirmed.

SMITH, J. (dissenting). I regret my inability to concur in the views of my Associates in this case and will very briefly state my reasons for dissenting.

The proceedings under sections 1-3 referred to in the majority opinion were begun in 1903-1904. The resolution dividing the city into sewerage districts was not adopted until 1907, long after these proceedings were had. Clearly the attempted division into districts was void. We held in the former appeal, and the majority opinion so holds, that the proceedings in 1903-1904 were in compliance with sections 1-3, because the entire city was declared to constitute a single sewerage district. The majority opinion in effect concedes that the attempted division of the city into districts in 1907 was void. All subsequent proceedings must then be considered as taken in the city, viewed as a single sewerage district. There was an attempted partial construction in this district. Section 11 of the act declares that in such case the "assessment shall be at a uniform rate per front foot." The assessment actually made was as follows: The city council divided the so-called first sewerage district into four assessment subdistricts, and by resolution declared that subdistrict No. 1 received no benefits, made no assessment whatever; in subdistrict No. 2 the assessment was described as "45 per cent. of the benefits"; in subdistrict No. 4 the assessment was described as "100 per cent. of the benefits"; while in subdistrict No. 3 the assessment was declared to be "the same as in the other assessment subdistricts"—all of which seems wholly meaningless, and cannot by any stretch of the legal imagination be considered "a uniform rate per front foot without regard to the lines of assessment subdistricts." The majority opinion says:

"It is undisputed that the assessments as made were uniform within each subdistrict, but were not at a 'uniform rate per front foot' throughout the whole of the territory covered by the sewerage installed."

I submit that there never was any assessment per front foot nor any assessment whatever. It is conceded that the assessment certificate in this case had no other foundation, and to my mind

it is a new legal doctrine announced by the majority opinion that "appellant cannot be heard to raise this objection to this assessment at this time."

I had always understood that some sort of assessment was an indispensable foundation for a special assessment lien, and that even the very humane view announced in the quotation from McCoy v. Able would hardly be sufficient to justify the enforcement of a lien where none existed. Nor do I think that our Legislature intended to "guide the courts" away from the fundamental principles which underlie the doctrine of special assessments when it said that the courts "shall disregard any and all irregularities and defects in the proceedings of the city council or any officer of the corporation."