CHICAGO & N. W. RY. CO., Appellant, v. CITY OF HOT SPRINGS, et al, Respondents, (Two Cases)

CHICAGO & N. W. RY. CO., Appellant, v. CITY OF HOT SPRINGS, et al, Respondents, (Two Cases)

(218 N. W. 876.)

(File Nos. 6181, 6196. Opinion filed April 10, 1928.)

*Gardner & Churchill,* of Huron, *E. B. Adams,* of Hot Springs, and *Byron Clark,* of Omaha, Neb., for Chicago & N. W. Ry. Co. and Chicago, B. & Q. R. Co.

*C. S. Eastman* and *E. W. Martin,* both of Hot Springs, and *A. R. Wells,* of Omaha, Neb., for City of Hot Springs and others.

POLLEY, J.  On the 24th day of February, 1920, the city of Hot Springs, to be herein referred to as the city, through its governing body, proposed and published a resolution of necessity to grade, gutter, curb, pave, and otherwise improve River avenue and East River avenue, and designated said project as "River avenue paving district"; the cost of making such improvement to be paid for by levying a special assessment against the property abutting upon such improvement.  The distance to be improved as described in the resolution is about one mile.  All of the portion of River avenue and East River avenue described in said resolution lies along the bottom of a narrow draw or canyon.  The bottom of said draw is also occupied by the channel of Fall river and the roadbed, a portion of which consists of but a single line of track occupied and used jointly by the two railroad companies, plaintiffs in these actions; and the said railroad roadbeds throughout nearly the entire length of the improvement are either within the limits of said River avenue or East River avenue as the same are laid out and platted, or immediately adjoining or abutting thereon.

At or about the time of the publication of the said proposed resolution, notice was given that a hearing would be held by the city council upon the said proposed resolution on the 29th day of March, 1920, at which time the council would hear objections, if any, to the making of said improvement, and modify or amend said proposed resolution in such manner as might be deemed proper, and adopt the same as so modified or amended.

At the time set for the hearing on the said resolution the plaintiffs appeared and protested against the making of the said improvement upon the ground, as stated in the said protest,

"* * * That the necessity therefor is not such as to warrant the making of said improvements, or any of them, and that the property and property rights of the undersigned [plantiffs] affected by such proposed improvements and sought to be charged with the costs thereof are already devoted to a public use and purpose, and are not subject to special assessment for such improve-

ments, and said property and property rights are not susceptible of benefit by the making of such proposed improvements."

This protest was overruled by the city council, and the resolution was adopted as published. Bids were called for, and a contract was let to make the improvement as described in the said resolution. Thereafter the work of making said improvement was fully performed and accepted by the city council. An apportionment of the cost of the improvement was made against the abutting property, including the roadbed and right of way of plaintiffs, and an assessment roll was filed with the city auditor on the 2d day of October, 1922. Notice was thereupon given that a hearing would be had upon said apportionment on the 6th day of November, 1922. At this hearing plaintiffs appeared and protested against the apportioning of any part of the cost of said improvement against their property. This protest was based upon the same grounds as the protest that was filed at the time of the hearing on the resolution of necessity. This protest was overruled. A resolution approving said apportionment was adopted by the city council, and the assessment roll, together with a certified copy of the said resolution, was filed with the city treasurer on the 21st day of November, 1922. Thereupon notice of said assessment was published, which notice stated that payment of the said assessment would become delinquent if not paid within 60 days after said 21st day of November, 1922.

Such proceedings were had by the city council that the said special assessment was divided into ten equal annual installments, and bonds were issued instead of assessment certificates; said bonds to be paid only from the proceeds of said special assessment when paid. These bonds were sold to the defendant Omaha Trust Company, a corporation of Omaha, Neb. Such bonds are negotiable in form, payable to bearer, and, prior to the commencement of this action, had been resold to clients of said Omaha Trust Company, and were then in the hands of innocent purchasers for value.

This action was not commenced until some time during the month of June, 1923. The relief prayed for in the amended complaint is that the certificates, bonds, or other instruments issued to the contractor or the Omaha Trust Company, or any other person on account of said street improvement lying between Eighth street and Minnekahta avenue, and between the north end of the depot

grounds and the bridge across Fall river near the Braun Hotel, be adjudged to be null and void, and be ordered delivered up for cancellation; that the record, if any, in the office of the county treasurer, the county auditor, and in the office of the city auditor of said city, purporting to show or record an assessment against the property of these plaintiffs for the said street improvement, be vacated, and canceled, and that, if the city auditor has not already certified said pretended assessment to the county treasurer or county auditor, he be enjoined from so doing; and that the county auditor and county treasurer be enjoined from spreading said pretended assessment upon the records of his said office against the property of these plaintiffs. The grounds upon which this relief is asked as set out in said amended complaint are that the property of plaintiffs against which the assessment is levied is not capable of being benefited or improved by the said improvements; that the same is not abutting or contiguous property, and that the description thereof in the said proceedings is void for uncertainty, and that the said improvements do not enhance the value of plaintiffs' property.

The trial court determined as a matter of law that the property and property rights of the plaintiffs are benefited by said street improvement, and that said benefit is equal in value to the amount of the cost thereof apportioned against said property. The court also determined that all the proceedings, with certain exceptions to be noticed hereafter, upon the part of the city, from and including the proposal of the said resolution of necessity, to and including the final assessment and the issuance of the bonds in payment of the cost of the improvement, were regular and legal and binding upon the plaintiffs' property in this action.

No fraudulent conduct or fraudulent intent on the part of any of the officers or employees of the city, or of the contractors who performed the work, is alleged or shown. Neither is it shown or claimed that there were any irregularities, except as above mentioned, in any of the proceedings leading up to the final assessment that would affect the legality of the said final assessment.

It will be noted that, while stated in different language, the grounds upon which plaintiffs are asking a cancellation of the assessment are, except as to the claim that the property did not abut, the same that were urged by plaintiffs in their protest against

the adoption of the original resolution, and again to the apportionment of benefits, and it is the contention of respondent that plaintiffs, having failed to bring their action before the contract was entered into, have waived their right to maintain this action for the cancellation of the assessment on these grounds. This contention is based upon the provisions of section 6412, Revised Code 1919. In part this section provides that:

"No injunction restraining the making of any local improvement under the provisions of this chapter shall be issued after the letting of the contract therefor."

This section was enacted for the purpose of preventing a property owner from standing by and seeing a local improvement made, the cost of which he knows is to be assessed against his property, and then, after the cost of the improvement has been incurred, maintaining an action to cancel the assessment on the ground that the city was without authority to enter into the contract.

When the resolution provided for by section 6364, Revised Code 1919, is proposed and published, a property owner who is opposed to the making of the improvement may appear before the council and be heard. He may urge any and all objections he may have to the making of the improvement. But his appeal is to the judgment only of the council, and they may overrule all of such objections. In lieu of, or in addition to, such objections, a protest signed by the owners of more than 65 per cent of the frontage of property liable to be assessed for the proposed improvement may be filed. Such a protest cannot be overruled. It deprives the council of power to proceed further with the improvement and the resolution is of no further effect. Section 6364, Revised Code 1919. A third remedy is to invoke the referendum and submit the resolution to a referendum vote. A negative vote will defeat the resolution and deprive the council of power to proceed further in the matter. Section 6364, Revised Code 1919. A fourth remedy open to the property owners is to bring a suit to enjoin the making of the improvement, but this must be brought before the contract is let. If the proceedings to make the improvement have not been halted by one of these four ways, then the council has jurisdiction to proceed and make the improvement.

Some members of the court are of the view that the part of

section 6412 hereinbefore quoted precludes proceedings in court to prevent the collection of assessments on any ground ·that could have been urged prior to the letting of the contract for the improvement. But we need· not, and do not, pass upon that question in this case.

■ Appellants in this action invoke the equitable powers of the court to relieve them from the assessment made against their property for the street paving. By the resolution of necessity, they were advised that the total cost of the improvement would. be approximately $70,000, and that of this cost approximately 50 per cent would be .levied against their property. In response to this notice, they appeared before the city council, and made objections and filed a protest. Their protest ·was overruled, and they. did not invoke the referendum nor get the necessary signatures required by statute to block the improvement; nor did they bring any action to restrain the city from proceeding with the improvement upon, the grounds set out in their protest, or upon any other grounds. They took. no steps to prevent the letting of the contract or the doing of the work. There can be no doubt that both the city council and the contractors proceeded with the work in reliance upon the liability of all owners whose property was described in the resolution of necessity for the payment of the assessment that might be made against them. That resolution showed that the property of appellants would be liable for approximately 47 per cent of the entire cost. In their brief on the appeal, appellants use round numbers, and say they were assessed for 50 per cent of the cost of the improvement. It is unthinkable that either the city or the contractor would have proceeded with the work had they known, or even supposed, that not more than 50 per cent of the cost of the improvement could ever be collected.

Under these circumstances, it is not equitable that appellants be absolved from payment of the assessment. The principles of equity preclude them from now questioning the liability of their property to assessment for this improvement.

Section 6412 was originally section 25, c. 213, L. 1903, and there read:

"No injunction to restrain *proceedings,* under the provisions of this act, shall be maintained unless the same shall be issued prior to making the contract herein provided for."

What is said by this court relative to this section in Haggart v. Alton et al, 38 S. D. 527, 162 N. W. 158, is applicable to this case:

"We are thus confronted with this situation: The council, after adopting the resolution of necessity, had jurisdiction to install the sewerage; appellants had notince that the council were proceeding under the assumption that the portion to be installed comprised a system for a whole district; appellants, being advised of these facts, and knowing that in due course an assessment based upon benefits received must follow and that such assessment would be uniform within assessment subdistricts if the council thought division into subdistricts necessary to provide uniformity and equality, stood by and allowed the city council to enter into a contract and install the sewerage; it is only when pay day arrives that appellants enter any complaint. It does not behoove one to thus remain silent while a municipality is openly engaged in the making of a public improvement under an authority vested in it, and, after such improvement has been completed and his property has received benefits therefrom, to question, for the first time, the legality of the steps taken by such municipality, and, relying upon some failure to comply with the strict letter of the law, seek to escape his just share of the burdens incident to the benefits received. We fully agree with the following from McCoy v. Able, 131 Ind. 417, 30 N. E. 528, 31 N. E. 453:

" 'Principle and authority forbid that property owners should be allowed to stand by, inactive and passive, until after the work has been done, and then come in and take from the contractor the value of this work and materials without compensation. For such persons the law has no very tender regard.' "

In this case the plaintiffs filed their protest against the making of the improvement with the city council, and the same remained on file throughout the entire proceeding. They also served notice upon the contractor before any work had been performed that they would not be liable for the cost of any part of the improvement. But there is no statutory provision for such protest or notice, and they afford plaintiffs no protection whatever. Where the property owner fails to halt the work upon the hearing on the original resolution, or by the protest provided for by section 6364, or by a referendum vote, and fails to bring an action to determine

the right of the city to proceed with the work before the contract is let, then he is in the position of having waived his objections and of acquiescing in the performance of the work, and the contractor has a right to regard him as acquiescing in the performance of the work and to rely upon him to pay his proportion of the cost.

It is contended by appellants that their property does not abut upon the improvement, and, for that reason, is not subject to special assessment to pay for the same. This might have been a ground for restraining the letting of a contract to do the work had an action for that purpose been commenced before the contract was let, but it is not a ground for restraining the collection of an assessment after the work has been performed. Appellants, by their failure to commence their action until after the contract was let, are deemed to have waived this objection. Section 6412, Revised Code 1919.

While the city, by the adoption of the resolution of necessity, acquired jurisdiction to proceed and let the contract and cause the making of the improvement, and to levy an assessment on abutting property to pay the cost thereof, there are certain classes of property that are not subject to assessment for this purpose. Plaintiffs claim that their property comes within one of those exempted classes. It is asserted in their protest that was filed with the city council, and also in their amended complaint that their property against which said special tax assessment has been levied is already permanently devoted to a public use, and, for that reason, is not subject to special assessment. In a certain sense, railroad property is devoted to a public use, but it is not public property in the same sense that property owned by the state or the United States government is, nor is it expressly exempted by law from all forms of taxation, as is the case with all state and government owned property. Plaintiffs do not own and operate their railroads for the free use of the public, but own and operate them as private individuals for the private gain that can be derived from such operation. Their property is subject to taxation for general purposes, and the city council has jurisdiction to levy a special assessment against it to pay for a local improvement, if in their judgment the property is specially benefited by such improvement. And this applies to property in which their interest extends

to their right to use it for railroad purposes only. Louisville & N. R. R. Co. v. Barber Asphalt P. Co., 197 U. S. 430, 25 S. Ct. 466, 49 L. Ed. 819; Id., 76 S. W. 1097, 25 Ky. Law Rep. 1024.

The trial court found certain irregularities to exist in the apportionment and assessment of the cost of some of the street intersections. These assessments were set aside by the court, and the court directed the mayor and city council to make a reapportionment and reassessment of the cost of these intersections. This direction was in accordance with the provisions of section 6412: .

"* * * The court may, if in its opinion the assessment has been rendered void or voidable by the omission or commission of any act required or prohibited, order that a reassessment be made under the provisions of the two preceding sections, and require the payment of the same as a condition for granting such relief, or declare by its judgment that the same shall be a lien upon the property and authorize the issuing of execution or proper process for its collection by a sale of the property. * * *"

For some reason not disclosed by the record, the question of the title of the plaintiffs to their right of way and roadbed through the city was injected into the case, and upon this question the court entered the following decree:

"Further ordered, considered, and decreed that the rights of the defendant, the city of Hot Springs, in and to the streets known and designated as River avenue and East River avenue in the city of Hot Springs are prior in time and superior in right to the easements, the property and rights of the plaintiffs in and to any portion of said streets, except as to all that portion of the property of the Chicago & North Western Railway Company between the west bank of Fall river and the west boundary line of River avenue, and being occupied and used as railroad and freight yards, and except as to the further portions of the said streets heretofore and now occupied and used by the said railroad companies, or either of them, for railroad purposes; and the plaintiffs the Chicago & North Western Railway Company and Chicago, Burlington & Quincy Railroad Company are hereby enjoined and restrained from asserting any right in and to the said streets or any portion thereof superior to the right and interest of the city of Hot Springs in the said streets for street and highway purposes, except as herein specified. The properties, easements, and rights

of way of the plaintiffs Chicago & North Western Railway Company and Chicago, Burlington & Quincy Railroad Company within River avenue and East River avenue in the city of Hot Springs as herein defined are valid and subsisting property rights for all purposes connected with the maintenance and operation of the said railways."

We believe this sufficiently protects the property rights of the plaintiffs in all those portions of said streets that are used for right of way, roadbed, and freight yards, so far as they are involved in this action, and so long as they are used for railroad purposes.

As a part of the court's finding of fact No. 6, the court found as follows:

"Included in the cost of paving the portion of East River avenue, herein referred to, was the cost of paving two parallelograms at the intersection of the right of way of the railway companies and the improved portion of the street immediately to the south of the bridge near the Braun Hotel. One of the said parallelograms being on the westerly side of the railway track, including 1,912 square feet of paving and costing $1,213.16; the other parallelogram immediately adjoining and lying on the easterly side of the railroad track embracing the area of 1,826 square feet, and costing $1,158.59, the cost of paving the two items referred to being $2,371.75. The court finds that one-half of this amount, or $1,185.87, was improperly included within the direct assessment herein set forth. This amount should be deducted from the sum of $11,465.76, leaving the net amount, $10,279.89, duly and regularly apportioned and assessed against the said property of the plaintiffs, which the court finds is a fair and just apportionment and assessment under the laws of the state of South Dakota."

The tract of ground referred to in this finding is the entire paved portion of the street within the 50-foot right of way of the plaintiffs at the intersection of the right of way and the street. The entire cost of paving this area was apportioned against the railroad property. By its decree the trial court relieved the plaintiffs from the payment of one-half of such cost. From this portion of the decree the city has taken a cross-appeal, No. 6196. In their argument in support of this appeal counsel for the city say:

"We suggest that no good reason can be advanced for excus-

ing the railway companies from paying one-half of this particular part of the street improvement fronting and abutting upon the railway property any more than for excusing them from bearing any portion of any other part of the street paving."

It appears to have been the theory of the trial court that the benefit of the paving at this intersection extends to the property beyond the boundaries of the railroad right of way, and that such property should bear a portion of the cost of the improvement. There are no facts or circumstances before this court from which we can say that the trial court has not made a fair and just apportionment of the cost of this part of the improvement, and, in the absence of such facts or circumstances, we would not be warranted in disturbing the trial court's solution of this part of this case.

The judgment and order denying new trial are affirmed.

SHERWOOD and BROWN, JJ., concur.

BURCH, P. J. (dissenting). I regret that I am unable to agree with the disposition of this case as expressed in the majority opinion. The vital question, namely, the liability of appellants' property to assessment for the cost of the pavement, is evaded. That question is not answered. What the correct answer may be, or whether the same result might be reached if the question were answered, need not here be considered. The evasion of the question has been accomplished, as it seems to me, by a process of unsound reasoning. Beyond deciding that railroad property as a class is liable to special assessment for pavement, the majority opinion does not decide the right to assess appellants' property. It decides the validity of the assessment cannot be questioned because of section 6412, R. C. 1919, providing:

"No injunction restraining the making of any local improvement * * * shall be issued after the letting of the contract therefor,"

—and because of equitable estoppel. With this position of the majority of the court, I cannot agree.

I am unable to see where section 6412 is applicable to this case. No attempt is made to restrain the making of the improvement. The improvement is made, and property subject to assessment cannot escape because of irregularities in the proceedings by

which the improvement was made. Section 6397 designates the property subject to assessment. If appellants' property is such property subject to assessment, I concede it may be assessed, and, if the assessment made is legal and just, it should be sustained; if not, a legal reassessment should be made so that all property liable to assessment will be subjected to its proportionate liability. But property not subject to assessment cannot be held because a court finds it is benefited by the improvement. The statute (section 6397) prescribes what property is benefited and the amount of the benefit. If appellants' property is such property it is benefited and in exactly the amount prescribed by statute. If it is not such property, any benefit it may indirectly receive is immaterial, and forms no basis for assessment in any amount. It seems to me illogical to hold appellants' property liable to assessment while refusing to consider appellants' contention that its property is not property subject to assessment under the statute. There is no contract liability, no tort, and, if there is no statutory liability, there can be no liability.

To support equitable estoppel the majority opinion says:

"By the resolution of necessity they (appellants) were advised that the total cost of improvement would be approximately $70,000, and that of this cost approximately 50 per cent would be levied against their property."

All they were in fact advised of was that the city officials claimed a right to levy an assessment on their property, and would, unless they saw their error, attempt to make such levy. In good faith they advised the board that they objected to the improvement if they were expected to pay, and also advised the board that their property was not subject to such assessment. There was nothing misleading about that. Again:

"They took no steps to prevent the letting of the contract and the doing of the work."

They were under no obligation to take steps if their property was not subject to assessment. If it was, they must pay. Nothing upon which to predicate estoppel there. Again:

"There can be do doubt that both the city council and the contractors proceeded with the work relying upon the liability of all owners whose property was described in the resolution of necessity, for the payment of the assessment that might be made against them."

The city council and the contractors had no right to rely upon the liability of owners named in the resolution of necessity. They should have relied only upon the liability of persons and property designated by the statute. There is nothing in the statute to the effect that property named in the resolution shall be subject to assessment. The statute is specific as to the property that is subject to the assessment, and the city council, by resolving that other property is also subject, does not make it so. Again:

"It is unthinkable that either the city or the contractors would have proceeded with the work had they known or even supposed that not more than 50 per cent of the cost of the improvement could ever be collected."

This statement is beside the point. The statute makes the assessable property liable for all of the improvement, and, because some of the property that the city council may have thought they could subject to an assessment was not available, does not require the contractor to waive the contract price. All the council has to do is to levy and collect, of the property subject to assessment, the entire cost.

I think we should decide whether or not the railroad property is property subject to assessment under the statute. When this is determined, the decision will follow as of course.

CAMPBELL, J., concurs in the views expressed in the foregoing dissent.