LeROY et al., Appellants v. RAPID CITY, Respondent

(193 N.W.2d 598)

(File No. 10947.  Opinion filed January 13, 1972)

Horace R. Jackson, of Whiting, Lynn, Jackson, Freiberg & Shultz, Rapid City, for plaintiffs and appellants.

James W. Olson of Wilson, Gundersen & Olson, Rapid City, for defendant and respondent.

PER CURIAM.

The question presented by this appeal is the power of the court to order and the city to make a reassessment of abutting property to pay for a completed public improvement when special assessments purportedly made to pay the city's share of the improvement are void.

On May 17, 1965, the common council of the city of Rapid City passed a resolution deeming it advisable to pave a part of South Canyon Road within city limits. The proposed improvement contemplated federal participation to the extent of 56% of the cost; the balance of 44% was to be shared equally by Pennington County and the city. See SDCL 9-42-6 et seq. The resolution asked the county to proceed with the project and the city assumed responsibility for maintenance and repair after completion.

On September 20, 1965, the council approved the project envisioned by the earlier resolution and passed another resolu-

tion approving the project as outlined by the Bureau of Public Roads and again recommended that the county proceed with the project, the city assuming 22% of the cost.

On April 3, 1967, the council approved the plans for the project prepared under the supervision of the state highway commission.* On May 9, 1967, the commission awarded the contract for the construction to the low bidder for $366,887.35, subject to approval by Pennington County.

On May 15, 1967, the city by resolution approved the bid on the basis 56% was to be paid by the federal government, 22% by the county and 22% to be assessed to abutting property owners. Additionally, the city and county agreed to assume $13,500 in engineering fees. The state highway department was authorized to execute a contract with the low bidder. The contract was dated May 20, 1967. Completion was to be within 120 working days.

Subsequently various pre-construction meetings were held which were attended by interested property owners, the contractor, and personnel of the governmental bodies and agencies involved. Discussions centered around the manner of construction and costs among other things. The work was performed and completed in accordance with the contract.

On October 21, 1968, pursuant to SDCL 9-42-8 the city engineer filed for inspection an estimate of the portion of the cost of the project to be paid by the city in the amount of $93,432.88, of which $12,315.47 was to be paid from general funds and $81,117.-41, plus a fiscal agent fee of 5% or a total of $85,173.28 was to be assessed against various properties benefited.

An assessment roll was thereafter prepared and filed on December 24, 1968. Notice of hearing thereon was given to property owners. On March 3, 1969, the assessment roll was approv-

---

* The project is identified as F.A.S. Route 403, Federal Aid Secondary Project No. SU-403-(7) Pennington County. Under the provisions of the Federal Highway Act, federal funds are available to municipalities for improvement of streets or highways. By statute South Dakota assented to the Act and the State Highway Commission is charged to do all things necessary to carry out the cooperation contemplated and provided for by the Act.

ed and the assessments set forth therein were levied. Assessments not paid within 30 days were to be certified to the county treasurer for collection as provided by law. Prepayments totaled $15,575.06.

On April 1, 1969, this action was commenced to adjudge the special assessments void and to enjoin the city from the collection thereof, and to quiet the title of the plaintiffs against the city.

The trial court entered a judgment in which it decreed the assessments levied against the properties of the plaintiffs void because no resolution of necessity was passed by the city as required by SDCL 9-45-20. The judgment also directed the city to forthwith proceed to make a reassessment as provided by SDCL 9-43-20 and 9-43-21. The judgment provided for cancellation of the void assessments and the lien created thereby upon payment of the reassessment. Properties upon which void assessments had been paid prior to judgment or would be paid prior to filing of the reassessment roll, were relieved from reassessment for the improvement.

■ ■ Statutes relating to special assessment must be strictly construed in favor of the property owner. Mason v. City of Sioux Falls, 2 S.D. 640, 51 N.W. 770, 39 Am.St.Rep. 802; State ex rel. Bowen v. Board of Commissioners of City of Sioux Falls, 25 S.D. 3, 124 N.W. 963; Mansfield v. Rapid City, 48 S.D. 155, 203 N.W. 201. This court has repeatedly held the resolution of necessity required by SDCL 9-45-20 is jurisdictional and furnishes the authority for the city to proceed with the improvement. Mason v. City of Sioux Falls, supra; Mansfield v. Rapid City, supra; C. & N. W. Ry. Co. v. City of Redfield, 83 S.D. 450, 160 N.W.2d 640.

■ ■ Respondent asserts the legislature when it passed Ch. 260, S.L.1953, now SDCL 9-42-6, 7 & 8, set forth a new procedure for special assessments eliminating the resolution of necessity when local improvements were to be financed in whole or in part by an agency of the state or federal government and in part by special assessments. We do not so interpret the statute. Had the legislature so intended we believe it would have stated

expressly and not left it to implication. Neither do we believe the legislature intended to dispense with this long recognized essential jurisdictional step just because state or federal funding is used to defray a part of the cost of the improvement. Since it is undisputed no resolution of necessity was passed by the common council before the special assessments were levied, we agree with the trial court that the special assessments purportedly levied on March 3, 1969 are void.

▇ This brings into focus the prime question. Appellants strongly urge that without a resolution of necessity the council was powerless to proceed; if it did, the city proceeded at its peril and it alone is liable for the city's share of the cost of the improvement and that the cost cannot be reassessed against abutting property benefited by the improvement. Appellants' argument is premised on the right of abutting property owners to protest the special assessment. SDCL 9-45-26. They say that without a resolution of necessity being passed, the right to protest is denied them.

Essentially the same argument was made in Olson v. City of Watertown, 57 S.D. 363, 232 N.W. 289. In that case the trial court had held the special assessments void because deficiencies in the resolution of necessity made it a nullity. No appeal was taken by the city. Nevertheless the city proceeded with a reassessment under the provisions of Sections 6410 and 6411, Rev. Code of 1919, now SDCL 9-43-20 and 9-43-21. The question was presented in an action to cancel the reassessments. The trial court canceled the reassessed special assessments and enjoined the city from further attempting to collect the cost of the improvement by assessing abutting property. On appeal it was conceded the void proceedings furnished no basis for the reassessment, but the city argued "that a reassessment is a new express power conferred upon the city to collect by special assessment the cost of an improvement actually constructed which benefits abutting property, although the entire proceedings leading to the construction may have been without authority and void."

In Olson the court said special assessments are taxes and within the power of the legislative body (the city) to impose. Find-

ing no constitutional inhibition it was held the statute authorized the reassessment as a tax to pay for a completed improvement. Speaking for the court, Judge Burch at pages 292, 293, wrote:

> "We are convinced that a reassessment as a new proceeding to impose a special tax on property benefited by an improvement may be made in the manner and within the limitations prescribed by our statute, section 6410, Rev.Code 1919, although the original proceedings under which the improvement was made were void or otherwise defective. As a new proceeding the jurisdiction and right to make the reassessment must depend upon the jurisdictional facts required by statute to reassess, and not upon prior jurisdiction to make the improvement. * * *

> "All the jurisdictional facts to authorize a reassessment must exist and the proceedings in reassessment must be as strictly observed to make a valid reassessment as is required in the first instance for special assessments in the regular manner, but the jurisdictional facts and the proceedings are not the same."

Meeting the argument that the result of its holding would make a mockery of attempting to protest a contemplated improvement, the court at page 294 said:

> "It may be thought the result of this holding is to give the city carte blanche to pave anywhere and in any manner in disregard of legal requirements and thereafter to specially assess the benefited property owners for the cost. But this is not so. The property owners have their remedies to restrain illegal acts of the city council and to compel compliance with the law. A too great departure from legal forms may result in no liability on the part of the city to pay for the pavement and those making the improvement may have to bear the loss. But where the action is sufficient to bind the city and a tax becomes necessary, we can see no reason why the

Legislature may not prescribe a special assessment tax. There may be much less injustice in taxing the benefited property than in a general tax to pay for an improvement of special benefit to a favored few. To allow that would be to put a premium upon laches and reward those who sit idly by and allow the city to make improvements contrary to law."

Appellants would limit the statute permitting a reassessment to instances where a special assessment is set aside for an **irregularity in the proceeding** after the adoption of a resolution of necessity or declared void for noncompliance with statutes **when ordering or letting the work.** They contend the statute does not cover the preliminary jurisdictional step, the resolution of necessity. Further, they urge, since the court in Olson did not refer to or discuss the Mansfield case and some prior cases, it was not intended to allow reassessments where no resolution of necessity was passed.

In view of this argument we have checked the briefs in the Olson case. We are satisfied Mansfield was considered. Most of our prior decisions including Mansfield were discussed in the briefs of the parties. Much of Mansfield was quoted including the statement "The resolution (of necessity) is jurisdictional and must be strictly followed so far as the extent and character of the project is concerned." Mansfield did not involve the power to reassess and there is no discussion whatsoever of this power. However, the Olson opinion makes it clear that this power given by statute to the city exists and can be exercised when the original special assessments are vacated for any cause, jurisdictional or otherwise. In our opinion Olson is controlling precedent for our decision and we are not persuaded to depart from it. See also 63 C.J.S. Municipal Corporations § 1541 et seq.; McQuillin, Municipal Corporations, Vol. 14, § 38.217 et seq.; Annot., 83 A.L.R. 1190.

In Olson the reassessment was by the city and the court did not order a reassessment. Nevertheless, the opinion discusses Section 6412, Rev.Code of 1919, now SDCL 9-43-74 and says the

duty of the court to order a reassessment is optional. We hold the court had the power to order the city to reassess under the terms of the statute.

Other points urged by appellants are not material to a decision on the appeal.

Affirmed.

HANSON, P. J., and BIEGELMEIER, WINANS and WOLLMAN, JJ., concur.

DOYLE, J., not participating.