The CITY OF BROOKINGS, South Dakota, a Municipal Corporation, Appellant,

v.

ASSOCIATED DEVELOPERS, INC., Brookings International Life Insurance Company, Brookings Mall, Inc., Dale G. Svennes Construction Company, Inc., Gilbert Erickson and Alene Erickson, First National Bank in Brookings, Four Sisters, Inc., Peter Hauff, Gene R. Hurst and Roger W. Anderson Trust, Robert A. Larkin and Janice M. Larkin, Gust M. Liebelt, Mid-Continent Developers, Inc., Paul E. Moriarity, Homer Osvog, Paul Prussman, Rose Marie Ramey, Harvey A. Schroeder and Alethea M. Schroeder, Robert S. Sexauer Company, Jerald Tunheim and Patricia Tunheim, and Stuart J. Webster and Sharon H. Webster, for themselves and all other parties similarly situated, Respondents.

No. 12574.

Supreme Court of South Dakota.

Argued April 18, 1979.

Decided June 14, 1979.

Alan F. Glover of Denholm & Glover, Brookings, for appellant.

James E. Kessler of Erickson & Kessler, P. C., Brookings, for respondents.

DOBBERPUHL, Circuit Judge.

Respondents brought this class action to challenge the validity of special assessments levied by appellant against their land. Counsel for the respective parties stipulated to the facts.

In March of 1974, appellant passed a resolution whereby it agreed to participate in a state-wide transportation project which would be funded through the federal-aid urban systems program.[1] Pursuant to that program, appellant was allocated over one and one-half million dollars of federal and state monies for city improvement projects that qualified and were approved for funding. Appellant's request for funding for two street improvement projects was approved. In 1975, appellant held hearings and passed resolutions of necessity for the

1. 23 U.S.C. § 103 et seq. (1964).

projects over the objection of one landowner that the city should not assess his property since the entire cost of the projects would be paid with federal and state funds. Thereafter the South Dakota Department of Transportation advertised for bids and submitted the low bid to appellant for approval.[2] Based on that bid, appellant awarded a construction contract for the two improvements in the amount of $789,949.17. Appellant's allocated fund was debited to reflect the amount of the approved cost of the improvements.

Following completion of the projects in 1977, appellant held hearings on the assessment roll, and objections were again made that the special assessments were improper. On February 8, 1977, resolutions were published approving the levy of special assessments in the amount of $180,312.72. Respondents instituted this suit on March 9, 1977.[3]

Appellant contends that the trial court erred in ruling that the special assessments are illegal and improper under the laws of the State of South Dakota, which grant municipalities the authority to levy such assessments.[4] It is well settled in South Dakota that statutes relating to special assessments must be strictly construed in favor of the property owner. *LeRoy v. Rapid City*, 86 S.D. 201, 193 N.W.2d 598 (1972); *Mansfield v. Rapid City*, 48 S.D. 155, 203 N.W. 201 (1925); *Pettigrew v. City of Sioux Falls*, 35 S.D. 78, 150 N.W. 772 (1915); *State v. Board of Com'rs*, 25 S.D. 3, 124 N.W. 963 (1910); *Mason v. City of Sioux Falls*, 2 S.D. 640, 51 N.W. 770 (1892). Special assessments may be levied only against property which receives a special benefit by virtue of a local improvement. SDCL 9–43–9; *Hawley v. City of Hot Springs*, 276 N.W.2d 704 (S.D.1979); *Ruel v. Rapid City*, 84 S.D. 79, 167 N.W.2d 541 (1969); *C. A. Wagner Const. Co. v. City of Sioux Falls*, 71 S.D. 587, 27 N.W.2d 916

(1947); *Chicago & N.W. Ry. Co. v. City of Hot Springs*, 52 S.D. 484, 218 N.W. 876 (1928); *Winona & St. P. R. Co. v. City of Watertown*, 1 S.D. 46, 44 N.W. 1072 (1890). The assessment is determined by the cost of the improvement, which is apportioned according to the value of the benefit conferred on the property. SDCL 9–43–7 to 9–43–10. "Assessments" and "taxes" serve different purposes and must be distinguished.

[T]he terms "tax" and "taxation" and the term "special assessments" have a well understood meaning by courts and the public generally. Taxes and taxation are understood to mean the taxes imposed by the government for state, county, city, or township purposes, and to provide funds for general expenses of the particular community or district for which the taxes are levied. Special assessments are understood to refer to money raised or levied *for some local municipal purpose to which the funds so collected are to be specifically applied in making the local improvements.* The assessment is not laid upon a whole community, but only on a small and defined part thereof; and, while a tax is levied upon all property of a state, county, city, or town without any reference to special benefits to the individuals taxed, special assessments are presumed to be made on account of special benefits to the property assessed, conferred by the improvements for which the special tax is levied.

*Winona & St. P. R. Co. v. City of Watertown*, 1 S.D. at 52, 44 N.W. at 1073 (emphasis supplied).

Not only must a special benefit be conferred on the property assessed, but the assessment, to be valid, must be "necessary to pay for a local improvement . . . ." *Ruel v. Rapid City*, 84 S.D. at 85, 167 N.W.2d at 544; *C. A. Wagner Const. Co. v. City of Sioux Falls*, 71 S.D. at 590, 27

---

2. The South Dakota Department of Transportation undertook responsibility for supervising the projects, hiring the engineers, and letting the construction bids.

3. The represented class is all persons or firms having a real property interest in land adjacent to either of the two streets upon which the improvements were made.

4. S.D.Const., art. XI, § 10; SDCL 9–43–5.

N.W.2d at 918. This element of necessity is also implied in SDCL 9–42–8, which provides that the basis for special assessments is the city engineer's estimate of the portion of the cost of the improvement "to be paid by the municipality" plus any incidental cost "necessary to be paid by the city" for the completion of the improvement in cases where the improvement is financed in part by federal or state funds and in part by special assessments.

In the case at bar, it is undisputed that a special benefit was conferred on respondents' properties by the improvements made. It is equally undisputed that the cost of the improvements was $789,949.17 and that this sum was paid in part by the federal government and in part by the South Dakota Department of Transportation's matching fund. Resolution No. 1711, passed by appellant, states in part that

the responsible officials of the City of Brookings agree to participate in the Statewide Transportation Planning Process in cooperation with the South Dakota Department of Transportation *with the understanding that the city assumes no financial committment* [sic] *through such participation*.[5]

City of Brookings, South Dakota, Resolution No. 1711, March 5, 1974 (emphasis supplied). That resolution shows appellant's clear intent to absolve itself of any liability or responsibility for the cost of the improvements. Appellant's position is that the only prerequisites for a special assessment are a cost of improvement and a benefit to the land assessed. Cases dealing with the validity of special assessments, however, imply that the underlying basis for such assessments is the municipality's commitment to pay for at least part of the cost of the improvement. See, e. g., *C. A. Wagner Const. Co. v. City of Sioux Falls,* supra; *Chicago & N.W. Ry. Co. v. City of Hot Springs,* supra; *Pettigrew v. City of Sioux*

*Falls,* supra; *State v. Board of Com'rs,* supra, where the municipalities became contractually obligated to pay for the cost of the improvements made. The basis for a special assessment is not the contract price for completion of the improvement but the actual outlay of funds by the municipality, since the purpose of the assessment is to reimburse the municipality for an expenditure that enhances the value of the landowner's property. 70 Am.Jur.2d Special or Local Assessments § 18 (1973). Thus, in *LeRoy v. Rapid City,* supra, which also involved an improvement made pursuant to the Federal Highway Act, the city agreed to pay 22% of the cost, the county 22%, and the federal government the remaining 56%. A special assessment, levied by the city to pay for its share of the cost, was challenged by affected property owners. This court held that the assessments were void because the city had not passed a resolution of necessity prior to levying the assessments as required by statute.[6] It is clear that the assessment would have been valid if such resolution had been passed. It is equally clear that the validity of the assessment rested upon the city's obligation to pay 22% of the cost. No similar basis exists for the assessments made in the case at bar since appellant expressly absolved itself of liability for any part of the cost.

SDCL 9–22–17 provides that all monies received from special assessments shall be applied only to the payment of improvements for which the assessment is made. When money collected from special assessments is used for any purpose other than as a direct benefit to the land assessed, the assessment is void because it is a tax rather than an assessment. *West Tennessee Flood Control & Soil C. Dist. v. Wyatt,* 193 Tenn. 566, 247 S.W.2d 56 (1952); *Winona & St. P. R. Co. v. City of Watertown,* supra; 70 Am.Jur.2d Special or Local Assessments § 1, p. 843 (1973). Appellant

5. 23 U.S.C. § 110(b) (1964) states that "The Secretary [of Transportation] may rely upon representations made by the State highway department with respect to the arrangements or agreements made by the State highway department and appropriate local officials where a

part of the project is to be constructed at the expense of, or in cooperation with, local subdivisions of the State."

6. SDCL 9–45–20.

intended to place the funds derived from the special assessments in a general fund to be used for projects and expenditures other than the improvements for which the assessments were made. Although SDCL 9–43–63 provides that a city may transfer any unexpected funds derived from a special assessment to a general fund, the statute also states that "[n]o moneys shall be transferred out of [the special assessment fund] until all obligations which are or may be charged against [the city] have been discharged." The latter clause is in the nature of a condition precedent so that no transfer of funds can be made in the absence of an obligation to pay part of the cost of the improvement. Since appellant had no such obligation, it cannot transfer the funds into its general fund.

■■■■■ The fact that appellant passed a resolution of necessity is not conclusive of the validity of the special assessment. A resolution of necessity is merely a jurisdictional requirement that allows a city to proceed with an improvement. *LeRoy v. Rapid City*, 86 S.D. at 204, 193 N.W.2d at 600. Neither can the assessment be deemed valid merely because appellant's allocated fund was reduced by the amount of the costs of the improvement. The validity of a special assessment rests primarily on the municipality's need to be reimbursed for its direct outlay of funds, which ensures completion of the beneficial improvements. Therefore, we hold that the special assessments levied against respondents are void since appellant was not obligated to pay for any part of the cost of the improvements and the assessments were not commensurate with any financial commitment of the appellant, even though a special benefit was

conferred on respondents' property by virtue of the improvements.

Appellant also argues that respondents' action was not timely commenced and relies heavily on the doctrines of waiver and estoppel to support its contention. Respondents contend that they complied fully with the requirements of SDCL 9–43–73, which sets forth the time limitations for challenging an assessment.[7]

Appellant cites *Chicago & N.W. Ry. Co. v. City of Hot Springs*, supra; and *Haggart v. Alton*, 38 S.D. 527, 162 N.W. 158 (1917), where special assessments were upheld based on general principles of waiver and estoppel.

> It does not behoove one to thus remain silent while a municipality is openly engaged in the making of a public improvement under an authority vested in it, and, after such improvement has been completed and his property has received benefits therefrom, to question, for the first time, the legality of the steps taken by such municipality, and, relying upon some failure to comply with the strict letter of the law, seek to escape his just share of the burdens incident to the benefits received.

*Haggart v. Alton*, 38 S.D. at 537, 162 N.W. at 161. Both of those cases were decided prior to the time that the second sentence of SDCL 9–43–73 was enacted, which allows landowners to challenge the validity of a special assessment subsequent to the time the contract for construction of the improvement is let.[8]

> [The statute] provides in part that "No injunction restraining the making of any local improvement under the provisions

---

7. SDCL 9–43–73 states in part:

No injunction restraining the making of any local improvement under the provisions of this chapter shall be issued after the letting of the contract therefor. No action or proceedings shall be commenced or maintained in any court attacking the validity of the proceedings for special assessments up to and including the approval of the assessment roll or questioning the amount of such assessment unless such action is commenced within thirty days after the publication of the

resolution approving the assessment roll and notice that assessments are due and payable

. . . .

8. It was not until 1957 that the thirty-day limitation for actions challenging the validity of a special assessment was added to the Code. See 1957 S.D.Sess.L., ch. 250, H.B. 1017, entitled "An Act amending Section 45.2118 of the South Dakota Code of 1939 relating to actions and remedies in special improvement proceedings."

of this chapter shall be issued after the letting of the contract therefor." This is evidently intended to prevent an individual property owner from stopping or delaying the completion of a public improvement project after the contract therefor has been let pending determination of the legality of a special assessment on a particular piece of property. *It does not prohibit a property owner from obtaining injunctive relief against an alleged illegal, unlawful or void special assessment against his property. This is contemplated in the succeeding sentence* . . . .

*Chicago & North Western Ry. Co. v. City of Redfield,* 83 S.D. 450, 455, 160 N.W.2d 640, 643 (1968) (emphasis supplied).

In the instant case, respondents instituted suit after the improvements were made and the assessment rolls published. The first sentence of SDCL 9–43–73 merely prevents landowners from delaying construction or completion of the improvement after the contract has been let. Respondents' goal was not to delay or prevent completion of the improvements but only to challenge the validity of the assessment. It was logical for them to proceed under the second sentence of the statute, which allows them to institute suit to challenge an allegedly illegal, void or unlawful assessment within thirty days after the assessment rolls are published. Since respondents' action was commenced within the thirty-day period, their suit was timely commenced.

The judgment is affirmed.

All the Justices concur.

DOBBERPUHL, Circuit Judge, sitting for FOSHEIM, J., disqualified.