Winona & St. P. R. Co. v. City of Watertown *et al.*

1. Where a provision was made in a grant to a railroad company by the former Territory of Minnesota, while the Territory of Dakota was a part thereof, exempting its property from "all taxation," *held*, that the real estate of said company was not thereby exempted from an assess-

ment for local municipal improvements; that such an assessment was not taxation, within the meaning of the grant.

2. The organic act of the late Territory of Dakota provides that "all property subject to taxation shall be taxed in proportion to its value." *Held*, that this limitation has no application to assessments for local municipal improvements, but only relates to general territorial, county, and municipal taxes, levied to defray the ordinary expenses of the government.

3. An assessment for improving an avenue in the city of Watertown was apportioned on the property of plaintiff, as well as all other property abutting on said avenue, along the line of the same, at a fixed sum per front foot. *Held*, that such an apportionment is not repugnant to or in conflict with the organic act of the late Territory of Dakota, and was a proper exercise of the power of the city under its charter, and therefore legal and valid.

4. The case of Railroad Co. v. County of Deuel, 3 Dak. 1, 12 N. W. Rep. 561, not reviewed,—the decision in this case being placed upon grounds not in conflict with it,—but the decision in that case adopted for the purposes of this case.

(Syllabus by the Court. Argued Feb. 15, 1890. Opinion filed April 1, 1890.)

Appeal from district court, Codington county; Hon. James Spencer, Judge.

The facts so far as material and the nature of the proceedings, are stated in the opinion.

*J. E. Mellette*, for appellant, city of Watertown.

Conceding that the lands in question are exempt from taxation, they are chargable with, and subject to, local assessments for improvement of streets upon which they abut. The right to levy assessments for such purposes is derived from the general power of taxation, not from right of eminent domain. People v. Mayor of Brooklyn. 4 N. Y. 319; Brewster v. City of Syracuse, 19, N. Y. 118; Scoville v. City of Cleveland, 1 O. St. 135; Maloney v. City of Marietta, 11 O. St. 638; Weeks v. Milwaukee, 10 Wis. 256; Garrett v. St. Louis, 25 Mo. 508; Williams v. Cammack, 27 Miss. 222; Burnett v. Mayor of Sacramento, 12 Cal. 82; Emery v. S. F. Gas Co., 28 Cal. 346.

Although this right is derived from the sovereign right of taxation, it does not follow that the assessment thus levied should be deemed a tax within the meaning of statutes exempting from taxation. *In re* Mayor of New York, 11 Johns

77; State v. Newark, 3 Dutcher 191; Northern Liberties v. St. John's church, 13 Pa. 81, 104; Chicago v. Baptist Union, 2 N. E. 254; State v. Jersey City, 13 Vr. 97.

The apportionment of a special assessment by foot frontage is legal and not in conflict with the organic act of the Territory of Dakota. Egyptian Lever Co. v. Harden 27 Mo. 495; St. Joseph v. Anthony, 30 Mo. 541; State v. Rees, 38 N. W. 97; Dowes v. Lynchburg, 6 S. W. 230; Avery v. Keokuk, 30 N. W. 780; Kuse v. Denver, 15 Pac. 825; Wilber v. Springfield, 14 N. E. 871; Wilson v. Chilcott, 21 Pac. 901.

*W. S. Glass* for respondent.

The territorial legislature had no power to establish a system of special taxation, § 1925 organic act; Weeks v. Milwaukee, 10 Wis. 203·

The exemption claimed in this case comes from a ' contract right, based upon a consideration, which cannot be changed without consent. La Salle *et al* v. Illinois Central R. R. Co., 31 Ill. 484; State v. Mayor, 35 N. J. Law 161.

The *ad valorem* system of taxation is the only one recognized by the organic act, and the apportionment of a special assessment per foot frontage is not legal thereunder. Stinson v. Smith, 8 Minn. 335; Municipality v. White, 9 La. Ann. 450; Larned v. Chicago, 34 Ill. 203; 4 N. Y. 426.

CORSON, P. J. This is an appeal by the defendants and appellants from an order of the district court overruling a demurrer to plaintiff's complaint, interposed by defendants, on the ground that the complaint does not state facts sufficient to constitute a cause of action. The action was brought by the plaintiff against the defendants, the city of Watertown, and Peter Mauseth, its city treasurer, for the purpose of having certain special assessments levied upon its property in said city, for improving Dakota avenue, on which its property abuts, declared illegal and void, and to have defendants perpetually enjoined from enforcing collection of the same by a sale of its property or otherwise, and for other relief. The complaint is quite lengthy, and sets out fully and clearly the various grants, legislative acts, and transfers of the property, resulting in vest-

ing the title of the property in the plaintiff, and from it it appears that certain grants of lands were made to a railroad company known as the "Transit Railroad Company," by the former Territory of Minnesota, while the late Territory of Dakota was a part thereof, which lands had been previously granted to the Territory of Minnesota by congress, by an act approved March 3, 1857,—the land in the city of Watertown, of the plaintiff, against which the special assessments alleged to be illegal and void were assessed, being a part of the lands so granted to the said Transit Company. It is further alleged that in the said grant to the Transit Company, from which plaintiff derives its title, it was expressly provided "that the lands thereby granted to the said Transit Railroad Company were and should be exempt from all taxation until the same should be sold and conveyed by said company," and that said right of immunity from taxation, originally granted to the said Transit Railroad Company was conveyed to and acquired by the plaintiff. It then sets out the assessment levied upon the property, and that it was assessed by foot frontage. It was conceded on the argument, by counsel for respondent, that the proceedings on the part of the city were regular in form, and in accordance with the provisions of the city charter relating to street assessment.

The learned counsel for respondent insists that the action is maintainable, and that the demurrer was properly overruled, on two grounds: (1) That the property is exempt from "all taxation," and consequently is exempt from special street assessments. (2) That the assessment as made is repugnant to the provisions of the organic act of the late Territory of Dakota, under which said assessment was made, which provides that "all property subject to taxation shall be taxed in proportion to its value." The learned counsel for appellants relies for a reversal of the order appealed from on three propositions, which are as follows: (1) The lands described in the complaint, and owned by respondent, are not exempt from taxation. (2) If they are so exempt, and the respondent holds them subject to all the immunities of such exemption originally granted

to the Transit Railroad Company, that exemption does not apply to local assessments levied upon them by appellants for the improvement of the streets upon which they abut. (3.) That the method of apportionment provided for and adopted was in no sense repugnant to, or in conflict with, the provisions of the organic law.

The first proposition, appellants' counsel frankly concedes, was decided against him in the case of Railroad Co. v. County of Deuel, 3 Dak. 1, 12 N. W. Rep. 561. In that case the court held that the right of immunity from taxation, as to the lands originally granted to the Transit Railroad Company, was conveyed to and acquired by plaintiff, and said lands were therefore exempt from taxation; but, as the taxes sought to be enjoined were those levied for general county and territorial purposes, the question of local street assessments was not considered or decided in that case. It is admitted that the lands in controversy here were acquired and are held by precisely the same tenure as the lands involved in that case, and therefore the determination in that case is decisive of the first proposition against the appellants. We are urged by counsel for appellants to review this decision, but we do not deem it necessary to do so, as our decision will be placed upon grounds that in no way conflict with it. Hence we wish to be understood as expressing no opinion in regard to it other than to adopt it for the purposes of this case.

This brings us to the consideration of the second proposition. Conceding the lands to be exempt from "all taxation," does such exemption apply to assessments for local street improvements? Do the terms "taxes" and "taxation" include special assessments? These questions involve the further one, under what power are special assessments for local municipal improvements made? In many of the earlier cases it was contended, and in some cases held, that special assessments were made under the sovereign power of eminent domain; and in the case of People v. Mayor, etc., 6 Barb. 214, Mr. Justice BARCULO speaking of special assessments for local improvements says that "it is by no means easy to trace the dividing line between the

two kinds of taking of private property." and that "the two appear to be in principle somewhat blended.   Both are exercises of the sovereign power over individual property, * * * and in both cases the individual is presumed to receive, or does in fact receive, some equivalent for his contribution." In reviewing this opinion in the same case in the court of appeals, Mr. Justice Ruggles says: "I perceive no great difficulty in pointing out the distinction between these two powers. Taxation exacts money or services from individuals, as and for their respective shares of contribution to any public burden. Private property taken for public use by right of eminent domain is taken, not as the owner's share of contribution to a public burden, but as so much beyond his share.   Special compensation is therefore to be made in the latter case, because the government is a debtor for the property so taken; but not in the former, because the payment of taxes is a duty, and creates no obligation to repay, otherwise than in the proper application of the tax.   Taxation operates upon a community, or upon a class of persons in a community, and by some rule of apportionment. The exercise of the right of eminent domain operates upon an individual, and without reference to the amount or value exacted from any other individual, or class of individuals." and he holds that special assessments are made under the taxing power.   People v. Mayor of Brooklyn, 4 N. Y. 419.   This decision has been followed by most of the courts since it was made, and it may now be regarded as the general doctrine as to this class of assessments,—that they are made under the taxing power, and not under the power of the sovereign right of eminent domain.   Burnett v. Mayor, etc., 12 Cal. 82; Emery v. Gas Co. 28 Cal 346; Brewster v. City of Syracuse, 19 N. Y. 118; Scovill v. City of Cleveland, 1 Ohio St. 135; Hill v. Higdon, 5 O. St. 245; Weeks v. Milwaukee, 10 Wis. 256; Garrett v. City of St. Louis, 25 Mo, 508; Newby v. Platte Co., Id. 259; Williams v. Cammack, 27 Miss. 222; Williams v. Mayor of Detroit, 2 Mich. 560; Mayor, etc. v. Proprietors, 7 Md. 536. Nichols v. Bridgeport, 23 Conn. 206; State v. City of Newark, 27 N. J. Law, 191; *In re* Van Antwerp, 56 N. Y. 261.

The power of taxation, and the power to levy special assessments, being both derived from the taxing power of the government, does an act or grant, exempting property from "taxation," or "all taxation," exempt it from special assessments for local municipal improvements? Notwithstanding the fact that both are derived from the same power, yet the terms "tax" and "taxation" and the term "special assessments" have a well-understood meaning by courts and the public generally. Taxes and taxation are understood to mean the taxes imposed by the government for state, county, city, or township purposes, and to provide funds for general expenses of the particular community or district for which the taxes are levied. Special assessments are understood to refer to money raised or levied for some local municipal purpose to which the funds so collected are to be specifically applied in making the local improvements. The assessment is not laid upon a whole community, but only on a small and defined part thereof; and, while a tax is levied upon all property of a state, county, city, or town without any reference to special benefits' to the individuals taxed, special assessments are presumed to be made on account of special benefits to the property assessed, conferred by the improvements for which the special tax is levied. It would seem, therefore, that between the two classes there is so wide a distinction that exemption from taxation generally would not exempt property from special assessments for local improvements that are incident to the location of the property, and made in theory, if not always practically, for the benefit of the property so specially assessed; and such seems to be the view taken of it by the courts.

An early and leading case on this subject is *In re* Mayor, etc., 11 Johns 77. This was a case arising in the city of New York, under an act of the legislature of the State of New York, which provided that no church, etc., "should be taxed by any law of the state." A church was assessed for street improvements, made on a street on which its church property abutted, and it resisted payment on the ground that it was exempt from taxation. The court in that case says: "The churches are not

well founded in their claim to a total exemption of their lots from assessments for opening, enlarging, or otherwise improving streets in the city of New York.  *  *  *  The exemption granted by the act of 1801 was in the general act for the assessment and collection of taxes; and the provisions of that act all refer to general and public taxes to be assessed and collected for the benefit of the town, county or state at large.  *  *  *  The legislature intended  *  *  *  to relieve religious and literary institutions from these public burdens.  *  *  *  But to pay for the opening of a street, in a ratio to the 'benefits or advantage' derived from it is no burden.  It is no talliage or tax, within the meaning of the exemption."  Mayor, etc., v. Proprietor. 7 Md. 517.

In this case the defendants claimed exemption, from the payment of assessments levied for improvements on the street in front of their property, under their charter, which contained the following exemption:  That the land appropropriated as a cemetery should "not be liable to any tax or public imposition whatever."  The court held the assessment valid, saying: "We think the legislature intended nothing more than to exempt the property of the proprietors from all taxes or impositions levied or imposed for the purpose of revenue, and not to relieve it from such charges, as are inseparably incident to its location, in regard to other property."  State v. Newark, 27 N. J. Law 187.  In this case the city levied a special assessment, for improving Market street, upon the property of the New Jersey Railroad & Transportation company.  The company resisted its payment, claiming to be exempt under its charter, which provides that the company "shall pay a tax of one-half of one per cent on its capital stock, and that no other or further tax or imposition shall be levied upon the company."  The assessment was held not to be a tax, within the provisions of its charter, and that it was not, therefore, exempt.  Trustees v. City of Chicago, 12 Ill. 406.  In this case exemption from special assessments was claimed under a charter providing "that the lands and lots shall be exempt from taxation of every description, by and under the laws of this state, until after the same

shall have been sold and conveyed by the trustees." The court held the assessment not to be taxation, within the meaning of the exemption contained in its charter. Chief Justice TREAT in his opinion says: "In our opinion, the exemption must be held to apply only to taxes levied for state, county and municipal purposes." Laws exempting property are to be strictly construed. Taxation is the rule; exemption the exception; and, before one can claim exemption from what would be otherwise his just share of burden or assessment for local improvements, he must find a plain warrant for such exemption in the law. Cooley, Tax'n, 147; Desty, Tax'n, 146; Northern Liberties v. St. John's Church, 13 Pa. St. 104; Emery v. Gas Co., 28 Cal. 346; City of Chicago v. Baptist, etc., Union, 2 N. E. Rep. 254; State v. Jersey City, 42 N. J. Law, 97, Bleecker v. Ballou, 3 Wend. 263; State v. City of Elizabeth, 37 N. J. Law, 330; Brewster v. City of Syracuse, 19 N. Y. 116; State v. Newark, 36 N. J. Law, 478; Buffalo City Cemetery v. City of Buffalo, 46 N. Y. 506; Roosevelt Hospital v. Mayor. etc., 84 N. Y. 108; Railroad Co. v. Decatur, 126 Ill. 92, 18 N. E. Rep. 315.

The learned counsel for the respondent has sought to draw a distinction between cases of exemption in the nature of a contract, made upon a valid consideration, and exemptions in statutes that were gratuitous,—contending that the former should be so construed as to include assessments in the exemption, though the latter might not be so held; but we are unable to see any ground for the distinction, either on principle or authority. The case of Neustadt v. Railroad Co., 31 Ill., 484, cited by counsel, holds that the exemption in the charter of the Illinois Central Railroad Company exempted it from general municipal taxation. sought to be imposed on the company by the city of. La Salle, but no reference is made to special assessments for local improvements. In Harvard College v. Aldermen of Boston, 104 Mass. 470, the college was held to be exempt from assessments for street improvements under a provision in its charter which exempted its property from "all civil imposition, taxes, and rates,"—language much broader and more comprehensive than that used in plaintiff's grant. We conclude, there-

fore, that the exemption from "all taxation" relied on by respondent, does not include special assessments for street improvements in towns and cities.

We will now proceed to examine the last question presented in this case, namely, is the principle of apportioning the special assessment adopted in this case—that is, per foot frontage—repugnant to or in conflict with the provisions of the organic act? It will only be necessary to notice two sections of that act as bearing upon the question. Rev. St. U. S. § 1851, (Section 12, Comp. Laws,) is as follows: The legislative power of every terrritory shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States. But no law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed upon the property of the United States; nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents." And Section 1925 (Section 13 Comp. Laws) provides: "In addition to the restrictions upon the legislative power of the territories, contained in the preceding chapter, Section eighteen hundred and fifty-one, the legislative assemblies of Colorado, Dakota, and Wyoming shall not pass any law impairing the rights of private property, nor make any discrimination in taxing different kinds of property, but all property subject to taxation shall be taxed in proportion to its value." The grant of power to the legislature, it will be observed, is very comprehensive, and gives that body, substantially, all the power usually exercised by legislative assemblies in the fully organized states, limited only by provisions of the organic act and the constitution of the United States. The power, therefore, of taxation, and of the legislature to provide for the organization of towns and cities, and to confer upon them the authority to make local public improvements and to levy assessments therefor, cannot, it seems to us, be questioned. For the purpose of ascertaining what has been deemed the nature and extent of the power usually possessed by legislative bodies we quote from the opinion of Chief Justice Marshall in the case of Bank v. Billings, 4 Pet. 514: "The power of legislation,

and consequently of taxation, operates on all the persons and property belonging to the body politic. This is an original principle which has its foundation in society itself. It is granted by all, for the benefit of all. It resides in government, as a part of itself, and need not be reserved when property of any description, or the right to use it in any manner, is granted to individuals or corporate bodies. However absolute the right of an individual may be, it is still in the nature of that right that it must bear a portion of the public burdens, and that portion must be determined by the legislature. This vital power may be abused, but * * * the interest, wisdom, and justice of the representative body, and its relations with its constituents, furnish the only security * * * against unjust and excessive taxation, as well as against unwise legislation." And again, in Mc-Culloch v. Maryland, 4 Wheat. 428, he says: "It is admitted that the power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power is found in the structure of the government itself. In imposing a tax the legislature acts upon its constituents. This, in general, is a sufficient security against erroneous and oppressive taxation. The people of a state, therefore, give to their government a right of taxing themselves and their property. * * * They prescribe no limits to the exercise of this right, resting confidently on the interest of the legislature, and on the influence of the constituents over their representative, to guard them against its abuse." In commenting upon this language of Chief Justice MARSHALL, Justice RUGGLES, in the case before cited, says: "Assuming this, as we safely may, to be sound doctrine, it must be conceded that the power of taxation, and of appor tioning taxation, or of assigning to each individual his share of the burden, is vested exclusively in the legislature, unless this power is limited or restrained by some constitutional provision. The power of taxing and the power of apportioning taxation are identical and inseparable. Taxes cannot be laid

without apportionment; and the power of apportionment is therefore unlimited, unless it be restrained as a part of the power of taxation."

Much of the reasoning, and many of the cases heretofore cited, are applicabe to this branch of the case. Indeed it seems to be difficult to distinguish between those cases where it has been held that in acts and grants exempting property from taxation the exemption does not include special assessments, and the cases where there is a limitation upon taxation, but without including, in terms. special assessments. We think the current of the authorities sustain the position that the limitation in the organic act, does not apply to special assessments for local municipal improvements. In Burnett v. City of Sacramento, 12 Cal. 76, Mr. Justice FIELD, in delivering the opinion of the court, says: ''The appellant contends that the law, in authorizing special assessments for the expense of improvement upon the adjacent property, conflicts with * * * * Section 13, Art. 11, which provides that taxation shall be uniform throughout the state. * * * * The thirteenth section, Art. 11, of the Constitution, does not cover the case. That section provides for equality and uniformity of taxation upon property, but applies, in our judgment, only to that charge or imposition upon property which it is necessary to levy to raise funds to defray the expenses of the government of the state, or of some county or town. We do not think it has any reference to special assessments for local improvements by which individual parties are chiefly benefited in the increased value of their property, and in which the public is only to a limited extent interested. For the expenses of such improvements it is competent for the legislature to provide, either by general taxation upon the property of all the inhabitants of the county or town in which they are made, or upon property adjacent thereto, and specially benefited thereby, The law in question places the burden upon the adjacent property, which is a far more equitable apportionment than if imposed upon the entire property of the city. There would, indeed, be manifest injustice in levying a general tax for a local improvement, which produces great benefit

to the owners of property in the vicinity, but lessens, perhaps, at the same time, the value of property in a distant part of the city." It will be observed, on an examination of this case, that Mr. Justice FIELD makes no reference to any other provision of the constitution of California, as bearing upon the subject, but places the decision of the court upon the ground that the provision of the constitution limiting taxation generally does not apply to special assessments. Laws providing for special assessments on property for local public improvements have been sustained in Missouri under a constitution which provides "that all property subject to taxation in this state shall be taxed in proportion to its value," but which does not contain a provision corresponding to the provisions in New York, California, and other constitutions that will be referred to hereafter. In Levee Co. v. Hardin, 27 Mo. 495, the question arose under an act authorizing a company to reclaim certain lands. and assess the same one dollar per acre within the district embraced within its charter. The law was sustained. and the court, in deciding the case, says: "That provision of our state constitution, which requires taxation to be proportioned to the value of the property on which it is laid, is only applicable to taxation in its usual, ordinary, and received sense, and is therefore limited to taxation for general purposes alone, where the money raised by the tax goes into the state treasury, or the county treasury, or the general fund of some city or town, and is applicable to any purpose to which the legislative body of such state, county, or town may choose to apply it; and is not intended to apply to local assessments, where the money raised is to be expended on the property taxed. These local assessments are not necessarily, under our constitution, apportioned by reference to the value of the property assessed, but may be regulated by the value of the benefit which the improvement to which the money is devoted is expected to confer on the proprietor." This case was approved in City of St. Joseph v. Anthony, 30 Mo. 541, where a street was macadmized, and the cost of the work borne by the owners of the adjoining property, and apportioned and charged on the adjoining lots in proportion to their front.

In Emery v. Gas Co., 28 Cal. 346, this whole question was most ably reviewed in an exhaustive opinion by Mr. Justice Sawyer, with a view, as stated by him, of settling the question in that state.    The action was brought to recover a sum of money assessed upon property in proportion to its frontage, fronting on Mission street, in the city of San Francisco, to pay the expense of grading the same.   It was contended on the part of the defendant that the law authorizing the city to levy special assessments, and especially on the principle of frontage, was unconstitutional.    The court held the law constitutional, and Mr. Justice Sawyer, in his opinion, says:  ''In Section 13, Art. 11, we think the words 'taxation' and 'taxed' were used * * * * to signify such general taxation upon all property as is in use in all the states to raise a general revenue for the purposes of defraying the ordinary expenses of state, county and municipal governments.''   Motz v. City of Detroit, 18 Mich. 495;  Woodbridge v. City of Detroit, 8 Mich. 274;  Williams v. Mayor of Detroit, 2 Mich. 560;  Weeks v. Milwaukee, 10 Wis. 256;  Garrett v. City of St. Louis, 25 Mo. 508;  Hill v. Higdon, 5 Ohio St. 246;  Railroad Co. v. Connelly, 10 Ohio St. 162;  Maloy v. City of Marietta, 12 Ohio St. 637;  Allen v. Galveston, 51 Tex. 302;  Sheehan v. Good Samaritan Hospital, 50 Mo. 155.

It is contended by the learned counsel for respondent that there is, in California and many of the other states that have held that special assessments are not governed by the general provisions in the constitutions of those states limiting taxation, an important provision in their constitutions, under which courts have made the decisions relied on, and which is substantially copied from Section 9, Art. 8, of the constitution of the State of New York, adopted in 1846, which is as follows:   ''It shall be the duty of the legislature to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessments and in contracting debt by such municipal corporation.''   It will be observed that no restriction is placed upon the power of the legislature by this section, but it requires the leg-

islature to so restrict it as to prevent abuses; thus fully recognizing the power as pre-existing, and not limited by any provision in the constitution, and not affected by the clause in the constitution placing limitations upon the power of general taxation. In regard to this section, Mr. Justice SAWYER says: "Taxation and assessments are here spoken of and recognized as legitimate modes of exercising power. * * * They must have contemplated that there is some form of exercising a power different from the ordinary power of taxation, and they assumed that that form was proper, and would actually exist under the constitution of California. We know, also, that a particular system of imposing charges, with some variation in the principle upon which they were apportioned, for local improvements at that time, and for a long period prior thereto, existed in nearly every state in the Union from which the people of California emigrated, known under the name of 'assessments,' and we know that this section of our constitution is a *verbatim* copy of a section of the constitution of the State of New York, where this system had been in use, according to the statement of Mr. Justice RUGGLES, in one form or another, for one hundred and fifty years. And we know that substantially the same provision is contained in the constitutions of several other states where the same system prevails. * * * and consequently that taxation, as used in our constitution in relation to a similar subject matter, is not to be regarded as including assessments." And Mr. Justice RUGGLES, in the case above cited, gives an interesting and instructive history of the adoption of this section in the constitution of 1846, in New York, in which he says: "This system of taxation was in force at the time of the making and adoption of our first, second, and third constitutions, and has stood on our statute books, along with the constitutions, from 1777 until now, without prohibition or restraint," and he concludes as follows: "Instead of abolishing the system of assessments, this section of the constitution refers it to the legislature for the correction of its abuses. The direction given to restrict the power of cities and villages to make assessments presupposes and admits the existence of a power to be restricted.

The constitution, therefore, in this section, recognizes and affirms the validity of the legislation by which city and village assessments for local purposes, like that now in controversy, are authorized, and seems to remove all doubt in relation to the legislative power in question." We have not had an opportunity to examine the case of Municipality v. White, 9 La. Ann. 450. cited by counsel for respondent; but as the case, as we understand, was decided by a divided court,—three judges concurring and two dissenting,—its force, as an authority is much weakened. The case of City of Chicago v. Larned, 34 Ill. 203, also cited by counsel for respondent, seems to have been decided under the peculiar provisions of the constitution of Illinois in force at that time, and of which Mr. Justice Breese, in his opinion in that case, says: "In neither of the states whose courts have made the decisions we have cited can there be found the same constitutional provisions as is contained in Sections two and five of the ninth article of our constitution." And again he says: "Section five is believed to be peculiar to our constitution, and manifests the great anxiety of its framers to place every possible species of taxation upon the only equitable basis conceivable, and is believed to be more stringent than any provisions in any other state constitution on the same subject." It seems that these provisions of the constitution of Illinois, as construed by the court in that case, did not give satisfaction to the people of that state; for it will be seen, on an examination of the new constitution adopted a few years after that decision was made that the provisions on this subject were materially changed, and their constitution brought more in harmony with the constitutions of other states. We are therefore led to the conclusion that congress did not intend, in the limitation placed upon the taxing power in the organic act, to include special assessments for local municipal improvements, and that such assessments were left to the control of the legislature, under such restrictions, as to the apportionment of the same, as it may in its judgment impose on the incorporated towns and cities; and that as the legislature possesses the power to provide for such assessments, it is competent for it to apportion the assessments

per front foot or otherwise, as it may deem proper. The order overruling the demurrer to the complaint is reversed, and the court directed to dismiss the complaint.