C. A. WAGNER CONSTRUCTION COMPANY, Respondent, v. CITY OF SIOUX FALLS, et al, Appellants

(27 N. W.2d 916)

(File No. 8895. Opinion filed May 31, 1947.)
Rehearing Denied August 29, 1947.

**Boyce, Warren & Fairbank** and **Rex M. Warren,** all of Sioux Falls, for plaintiff and Respondent.

**Roy D. Burns,** of Sioux Falls, for defendant and Appellant.

**James O. Berdahl,** of Sioux Falls, for defendant and Respondent Woodlawn Cemetery.

ROBERTS, J. Defendant city entered into a contract with the plaintiff for the paving of a portion of Fourth

Avenue in the City of Sioux Falls. The contract provided that the city would pay for the work by the issuance of "certificates of special assessment, levied upon the property, in the manner provided by law." After the work was completed, the city issued and delivered to plaintiff contractor an assessment certificate against a ten acre tract belonging to Woodlawn Cemetery. The certificate states that the city made an assessment upon abutting property and that the property in question had been legally assessed in the sum of $1,846.54, payable in five installments. Woodlawn Cemetery declined to pay the assessment on the ground that its property was exempt from special assessments for local improvements. Plaintiff brought this action claiming that the city was primarily liable if it had no authority to make the assessment.

Woodlawn Cemetery was incorporated in July, 1905, as a nonprofit corporation under the provisions of Sections 770 to 779, Civil Code 1903, which with minor changes are now SDC 11.19. It originally acquired a tract of land within the corporate limits of the city of Sioux Falls, consisting of approximately eighty acres. This action has no relation to that property. A zoning ordinance adopted July 20, 1928, prohibits the use of property in a residential or commercial use district for cemetery purposes. Thereafter, and while that ordinance was in effect, Woodlawn Cemetery acquired title to a tract of approximately forty acres adjoining its cemetery grounds. This forty acre tract includes the land described in the assessment certificate and is within a part of the city which is restricted to commercial and residential uses as defined by the zoning ordinance. It has not been subdivided into burial lots or used for cemetery purposes.

The trial court held the property in question to be exempt from special assessment and the assessment thereon for the improvement of the street to be illegal and void. From a judgment rendered for the amount demanded in the complaint, the city has appealed.

The statute relating to cemetery corporations provides that "All the property of every such corporation and the lots sold by it to individual proprietors shall be exempt from taxation, assessment, lien, attachment, and

from levy and sale upon execution and all such real property shall be exempt from appropriation for streets, roads, or any other public uses or purposes." SDC 11.1911. While an assessment for local improvements, which in this case was the paving of a street, is regarded as a species of taxation and the exercise of the taxing power, yet there is a clear distinction betwen the terms "taxation" and "assessments." Winona & St. P. R. Co. v. City of Watertown, 1 S. D. 46, 44 N. W. 1072. Taxes are impositions for purposes of general revenue, while assessments are those special and local impositions upon property within a limited area which are necessary to pay for a local improvement and are imposed with reference to the special benefit which the property is supposed to have derived therefrom. A constitutional or statutory exemption from taxation is an exemption from ordinary taxes only and does not include special assessments for local improvements. Whittaker v. City of Deadwood, 23 S. D. 539, 122 N. W. 590, 139 Am. St. Rep. 1076. The city insists that the word "assessment" in Section 11.1911, supra, is merely descriptive of a part of the process of taxation and should be construed as referring only to general taxes. We think that the addition of the word "assessment" has the effect of broadening the exemption as pointed out by the court in the case of Oakland Cemetery Ass'n v. City of St. Paul, 36 Minn. 529, 32 N. W. 781: "In this statute, both terms, 'taxes and assessments,' are used; the latter evidently in the sense above referred to, viz., burdens or charges to defray the expense of a local improvement. To give the word 'assessment' any meaning or force whatever, it must be held to mean something not included in the preceding word, 'taxes.' And it is a familiar rule that a statute should be so construed that, if it can be prevented, no clause, word, or sentence should be superfluous, void, or insignificant."

Notwithstanding such construction of the statute, the city contends that there is no good reason for concluding that the legislature intended the exemption to apply to property not held and used by the corporation for purposes for which it was not created. Authority is conferred upon a cemetery corporation to acquire and to hold "real porperty not exceeding one hundred sixty acres for the sole use and purpose

of a burial ground." SDC 11.1906. "Whenever an interment is made in any lot transferred to an individual owner by the corporation, the same thereby becomes forever inalienable while any person is buried therein and descends in regular line of succession to the heirs at law of the owner." SDC 11.1905. Whenever the officers of a cemetery corporation find it necessary to acquire additional land for cemetery purposes, they "may proceed to have the land * * * condemned," if they cannot acquire it by purchase. SDC 11.1907. Such corporation has the power to improve its grounds and to prohibit improper use or ornamentation of lots and the duty is imposed upon its officers to adopt by-laws "to the end that all the appliances, conveniences, and benefits of the public and private cemetery may be obtained and secured." SDC 11.1908. Receipts derived from sale of burial lots, after payment of current expenses, .must be "exclusively applied, appropriated, and used in protecting, preserving, improving, and embellishing the cemetery and its appurtenances." SDC 11.1910. As we have already pointed out, the property of such corporation is exempt from "taxation, assessment * * * and * * * from appropriation for streets, roads, or any other public uses or purposes." The policy as declared by these provisions had its beginning in territorial laws. Section 49, Chapter 15, Laws 1867, authorized cemetery corporations to "hold land exempt from execution and from any appropriation to public purposes, for the sole purpose of a cemetery, not exceeding one hundred acres, which shall be exempt from taxation if used exclusively for burial purposes, and in no wise with a view to profit." It may be noted incidentally that section 11.1911, supra, in its original form, § 561, Civ Code, Rev. Codes 1877, granted exemption to "such benevolent corporations." The word "benevolent" was omitted from Section 8898, Rev. Code 1919, and with this exception the original section, § 561, supra, has been retained in the several revisions without modification.

■■ The power of the legislature to exempt from special assessments property devoted to cemetery purposes cannot be doubted. See decisions collected in Ann. Cas. 1912A 1047; L. R. A. 1918A 157; 71 A. L. R. 322. The exemption

is not restricted to such land as has been actually occupied by graves and used for purposes of interment, but comprehends lands dedicated and set apart for future interment purposes, if not excessive in extent.

 It is not claimed that the city had no power to prohibit by ordinance the use of the land in question for cemetery purposes. An ordinance within its proper scope has the same local force and effect as a statute. McCleod v. Tri-State Milling Co., S. D., 24 N. W.2d 485. It is conceded that the land cannot be devoted to the purpose mentioned until the city repeals or amends its zoning ordinance. The crucial question is whether the statutory exemption extends to land other than that which is actually used or intended to be used for burial purposes.

The case of People ex rel. Oak Hill Cemetery Ass'n v. Pratt, 129 N. Y. 68, 29 N. E. 7, is cited by respondents. The court had before it a zoning ordinance prohibiting the use of relator's land for the burial of the dead. After reviewing statutory provisions pertaining to cemetery corporations, the court concluded: "It is thus seen by this brief review of the provisions of the act that the land of the relator is held exclusively for cemetery purposes, and that it cannot be devoted to or used for any other purpose. It has no power to sell any of its land except to persons who desire it for burial purposes, and all of its land, the moment it acquires it, and before a dead body is buried therein, is absolutely exempt from all taxation. The cemetery land of such a corporation not only, but all its property, is thus exempt. So long as Oak Hill Cemetery exists as a corporation it must hold its property exclusively for cemetery purposes; and, while burials cannot now be made therein, the ordinance prohibiting them may be repealed or modified at any time, so as to allow them. There is no provision in the statute that its land shall be exempt from taxation only so long as burials are authorized to be made therein. The exemption is absolute."

In Minnesota a contrary result under similar statutory provisions was reached. State v. Ritschel, 220 Minn. 578, 20 N. W.2d 673, 676. The Minnesota statute provides for

the incorporation of cemetery associations. Power is granted to an association to acquire and hold "not exceeding three hundred acres of land to be actually used and occupied exclusively for the burial or cremation of the dead." Minn. St. 1945 and M. S. A. § 306.05. The lands and property of such an association are exempt from all public taxes and assessments. In that case, the court said: "It seems reasonably clear that, when the statutory provisions authorizing the incorporation of cemetery associations for the purpose of procuring and holding or selling lands or lots exclusively for the purpose of public cemeteries, authorizing them to take and hold land to be actually used and occupied for the burial or cremation of the dead, and granting to such associations exemption from taxation of their land and property are construed together as they should be, since the latter refers to the others, the legislative intention was to limit the exemption from taxation to land actually used for burial purposes * * *. Intention to use land for burial purpose at some future time, which of necessity here could be only when and if the city council of Minneapolis should give its consent thereto or amend or repeal the ordinances in question, is not sufficient to satisfy the requirement of an actual and present use for such purpose. * * * As a practical matter, a cemetery association must have on hand for sale to the public lots laid out for burial purposes, but not actually occupied as graves. The word cemetery comprehends a place where burials have been made and will continue to be made in the future. Owning and holding land for such future needs, if reasonable in amount and not beyond reasonable anticipation, are incidental to operating a cemetery. The difference between such a case and the instant one is that in the former the land is devoted to burial purposes both past and anticipated in the near future, whereas in the latter there is no such use at all. In the instant case, such use could not be reasonably anticipated, because of legal obstacles to the accomplishment of any such use."

It is contended that the general exemption of "all the property of * * * such corporation" (§ 11.1911, supra) includes property of a cemetery corporation whether

used or intended to be used for cemetery purposes or not. Exemptions are based upon considerations of public policy. Constitutional and statutory provisions are to be given a reasonable, natural and practical construction to effectuate the purpose for which an exemption is created. State ex rel. Eveland v. Erickson, 44 S. D. 63, 182 N. W. 315, 13 A. L. R. 1189. It may be observed that this general exemption with respect to ordinary taxes applied prior to the constitutional amendment (§ 2, Art. XI) Laws 1911, c. 265, when the legislature could exempt under the provisions of Section 6, Art. XI, of the State Constitution, only property "used exclusively for * * * cemetery * * * purposes." State ex rel. Hayes v. Board of Equalization, 16 S. D. 219, 92 N. W. 16; State ex rel. Eveland v. Johns, 43 S. D. 279, 178 N. W. 945. In South Dakota Sigma Chapter House Ass'n v. Clay County, 65 S. D. 559, 276 N. W. 258, we recognized that sound reason dictates that where a corporation is chartered for charitable or benevolent purposes a general exemption is construed as applying only to property used for the purpose for which it was created. The authority conferred upon a cemetery corporation is to hold real property for the "sole use and purpose of burial ground". Because of the city ordinance, use of the land involved in this action is restricted and future use for cemetery purposes cannot be reasonably anticipated. It is held by Woodlawn Cemetery as the same character of land would be held by an individual. It follows that the exemption statute did not relieve the property from the burden of the special assessment imposed to pay the cost of the local improvement.

The judgment appealed from is reversed.

All the Judges concur, except POLLEY, J., not sitting.