MITCHELL PUBLISHING CO., Appellant, v. WILDER,
Respondent

(52 N. W.2d 732)

(File No. 9220.   Opinion filed March 31, 1952)

Rehearing denied May 6, 1952

**Hitchcock, Nichol & Lassegard,** Mitchell, for Appellant.
**Ralph A. Dunham,** Atty. Gen., **Benj. D. Mintener,** Asst.
Atty. Gen., for Respondent.

BANDY, Circuit Judge. The Director of Taxation of the State of South Dakota determined that the Mitchell Publishing Company, a corporation engaged in business in the State of South Dakota, was liable for the payment of Use Tax upon a newspaper printing press which it purchased outside the state and had installed in its principal place of business in this state. From such determination the Mitchell Publishing Company appeal to the Circuit Court of Davison County, South Dakota, where the determination of the Director of Taxation was sustained.

From the undisputed facts, which were largely stipulated, it appears that the appellant publishes a daily newspaper with a circulation of about 16,000 copies, slightly in excess of two per cent of which circulation is mailed or otherwise delivered to subscribers outside this state. That substantially all of the supplies utilized, including ink, paper, mats, comics, supplements, and cartoons are purchased and obtained from outside this state. That approximately fourteen percent of the advertising appearing in the newspaper originates outside the state. That news service is obtained from the United Press and the Associated Press, of which news eighty-four per cent originates outside the state. That reporters, officers and agents of the appellant corporation are frequently required to go outside the state on business connected with the publication of the newspaper. That such printing press is only suitable for and is used exclusively in printing the daily newspaper.

The appellant contends that this printing press is used in interstate commerce or that, at least, it is used or to be used in operating or maintaining interstate commerce, and claims exemption from liability for the Use Tax under the language contained in subdivision (3) of Section 4 of Chapter 276, Laws of 1939, as amended by Chapter 301, Laws of 1943, which, insofar as is material to this action, provides exemption for "Tangible personal property, the storage, use or other consumption of which this State is prohibited from taxing under the Constitution or laws of the United States of America or under the Constitution of this State, or which is used or to be used in operating or maintaining interstate transportation or interstate commerce * * *."

Since, in their essence, all of the Assignments of Error present only the question of the exemption of the printing press from the Use Tax, they will be considered under the two main classifications of the statute itself, the first portion of which grants exemption to: "Tangible personal property, the storage, use or other consumption of which this State is prohibited from taxing under the Constitution or laws of the United States of America or under the Constitution of this State * * *."

Interpretations of the Federal Constitution made by the United States Supreme Court being final, Dakota Photo Engraving Co. v. Woodland, 59 S. D. 523, 241 N.W. 510, we turn to those decisions to ascertain whether the State of South Dakota is prohibited by the United States Constitution from imposing the tax in question and find that in Southern Pacific Co. v. Gallagher, 306 U. S. 167, 59 S.Ct. 389, 83 L.Ed. 586, and in Pacific Telephone & Telegraph Co. v. Gallagher, 306 U. S. 182, 59 S.Ct. 396, 83 L.Ed. 595, the United States Supreme Court held that (as applied to the instant case) there was a "taxable moment" when the printing press had reached the end of its interstate transportation to the appellant and before it had been put to any use, regardless of the purpose for which it was ultimately to be used. It is accordingly clear that the Federal Constitution does not prohibit the imposition of the tax in question. At this point it should be remarked that the appellant does not contend that there is any Federal law nor any provision of the State Constitution which prohibts the State of South Dakota from imposing the tax in question. It follows that appellant is not entitled to exemption under that part of the statute herein referred to as the first portion.

The second portion of the statute grants exemption to: "Tangible personal property, * * * used or to be used in operating or maintaining interstate transportation or interstate commerce * * *."

In referring to this same portion of this same statute, this court said in Scandrett v. Nord, 70 S. D. 527, 19 N.W. 2d 344, "Not only did the Legislature expressly exempt from the tax the use of property which the state is prevented from taxing, but it went further and specificially exempted

property 'used or to be used in operating or maintaining interstate transportation or interstate commerce.' * * * Our concern, therefore, is not whether the state is prohibited from taxing the use made by plaintiffs of this distillate oil, but rather whether the oil was used or to be used in operating or maintaining interstate transportation or commerce."

Our concern in the instant case is the same and to ascertain whether the printing press was used or to be used in operating or maintaining interstate transportation or commerce we must determine whether the news and advertising of out-of-state origin came to rest upon its receipt by the appellant publisher, whether the continuity of transit was then broken and the subsequent mechanical act of printing was therefore a local activity, similar to manufacturing, and not a part of interstate commerce; or whether such news and advertising of out-of-state origin retained its interstate character in the hands of the publisher and the flow of commerce continued through his hands and processing.

In the very recent decision of Lorain Journal Co. v. United States, 342 U. S. 143, 72 S.Ct. 181, 185, announced after this case had been argued and submitted on appeal, the Supreme Court of the United States said: "There can be little doubt today that the immediate dissemination of news gathered from throughout the nation or the world by agencies specially organized for that purpose is a part of interstate commerce. * * * The same is true of national advertising originating throughout the nation and offering products for sale on a national scale. * * * The distribution within Lorain of the news and advertisements transmitted to Lorain in interstate commerce for the sole purpose of immediate and profitable reproduction and distribution to the reading public is an inseparable part of the flow of the interstate commerce involved. * * * Unless protected by law, the consuming public is at the mercy of restraints and monopolizations of interstate commerce at whatever points they occur. Without the protection of competition at the outlets of the flow of interstate commerce, the protection of its earlier stages is of little worth."

Applying the reasoning of the foregoing decision to the fact situation in this case it follows that the inter-

state flow of out-of-state news and advertising coming to the Mitchell Publishing Company continued through, unbroken, to the reading public, both within and outside the State of South Dakota and it necessarily follows that the printing press was but an instrumentality utilized in transmitting and carrying on this flow of commerce. Hence, the printing press was used and to be used in operating or maintaining interstate transportation or commerce and is exempted from the Use Tax sought to be imposed.

The decision of the Circuit Court is reversed with directions to enter judgment in favor of the appellant.

RUDOLPH and LEEDOM, JJ., concur.

SMITH, J., concurs in result.

BANDY, Circuit Judge, sitting for SICKEL, P. J., disqualified.

ROBERTS, J., dissents.

ROBERTS, J. (dissenting). Appellant contends that it is exempt from payment of the taxes in question for the reason that the printing press purchased by it is used in operating and maintaining interstate commerce within the meaning of the provisions of Subdivision (3), Section 4, Chap. 276, Laws 1939, as amended by Chap. 301, Laws 1943, which exempts from the Use Tax Act "Tangible personal property, the storage, use or other consumption of which this State is prohibited from taxing under the Constitution or laws of the United States of America or under the Constitution of this State, or **which is used or to be used in operating or maintaining interstate transportation or interstate commerce** * * *." The use tax designed to complement sales tax and to effect equality is imposed upon the "use, storage, and consumption" of tangible personal property purchased outside the state and subsequently employed therein. Ch. 276, Laws 1939. It may be conceded as claimed that the newspaper published by appellant has a circulation in other states; that it carries advertisements obtained from sources outside the state including the interstate shipment of cuts and mats; that it publishes news transmitted in interstate commerce; and that purchases of paper, ink and other supplies incidental to publication involve transactions in interstate commerce.

Appellant pointing to its business activities insists that there is no basis for distinguishing the present case from that of Scandrett v. Nord, 70 S. D. 527, 19 N.W.2d 344. The distillate sought to be taxed in that case was brought from without the state by a railroad company to be used in the maintenance of its interstate transportation system. The point was brought out in that case that where property is carried into the state and there brought to rest or halted for a moment before interstate consumption had begun taxes upon the privilege of use, storage and consumption do not come within the prohibited burden upon interstate commerce. Conceding that there was a taxable moment and that there existed constitutional power to impose a tax, this court sustained a claim of exemption under the explicit language of the statute excluding from the tax property to be used "in operating or maintaining interstate transportation".

The federal courts seeking to define the scope of the power of states to levy excise taxes have in numerous decisions dealt with local activities as incidents of interstate commerce. In Utah Power & Light Co. v. Pfost, 286 U. S. 165, 52 S.Ct. 548, 76 L.Ed. 1038, it is observed that one who produces a commodity, subsequently sold by him in interstate commerce, whether such sale and shipment were intended or not, has engaged in two distinct and separate activities. The production is an internal concern of the state. The sale and shipment to customers in another state involves interstate commerce. The court upheld a state tax on the generation of electric energy for barter, sale or exchange. Much of the electricity generated by the company was sold in neighboring states. The court regarded the generation of electricity as a local operation and distinct from the subsequent tranmission in interstate commerce.

In Western Live Stock v. Bureau of Revenue, 303 U. S. 250, 58 S.Ct. 546, 550, 82 L.Ed. 823, 115 A.L.R. 944, the state statute under consideration levied a privilege tax on the gross receipts from advertising of any person engaged in the publishing business. The appellant publisher sold space in its trade journal which it circulated both within and without the taxing state to advertisers in other states. The

court held that the "business of preparing, printing and publishing magazine advertising is peculiarly local and distinct from its circulation" and hence the tax like that upon the privilege of manufacturing within the state was valid. In upholding the tax the court recognized that it differed from the privilege tax laid upon the occupation of radio broadcasting which is in itself interstate commerce without local incidents and held invalid in Fisher's Blend Station v. Tax Commission, 297 U. S. 650, 56 S.Ct. 608, 80 L.Ed. 956.

In Memphis Natural Gas Co. v. Stone, 335 U. S. 80, 68 S.Ct. 1475, 1477, 92 L.Ed. 1832, the court sustained a state tax imposed upon "local activities in maintaining, keeping in repair, and otherwise in manning the facilities" of an interstate pipe line. The court held that "such local incidents form a sound basis for taxation by a state of foreign corporations doing interstate business."

See also Oliver Iron Mining Co. v. Lord, 262 U. S. 172, 43 S.Ct. 526, 67 L.Ed. 929; McGoldrick v. Berwind-White Coal Mining Co., 309 U. S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876; Coverdale v. Arkanas-Louisiana Pipe Line Co., 303 U. S. 604, 58 S.Ct. 736, 82 L.Ed. 1043; Adams Manufacturing Co. v. Storen, 304 U. S. 307, 58 S.Ct. 913, 82 L.Ed. 1365; discussions of sales and use taxes are found in 52 Harvard L.R. 617, "Sales Tax In Interstate Commerce"; 38 Col.L.R. 49, "Sales and Use Taxes"; 48 Yale L.J. 273, "The Commerce Clause and State Sales Taxes".

Appellant relies strongly upon Lorain Journal Co. v. United States, 342 U. S. 143, 72 S.Ct. 181, 96 L.Ed. 162, as supporting the contention that the printing press involved herein is an inseparable part of interstate commerce. In that case the question was as to the scope of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1-7, 15 note, and the court did not re-examine the long line of decisions interpreting the commerce clause in relation to state privilege taxes. Whether the appellant is engaged in activities within the regulatory powers of Congress is not here controlling. The Federal Supreme Court has indicated that permissible state taxation and regulatory legislation involve material distinctions. Stafford v. Wallace, 258 U. S. 495, 42 S.Ct. 397, 66 L.Ed. 735; Minnesota v. Blasius, 290 U. S. 1, 54 S.Ct. 34, 78 L.Ed. 131;

National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U. S. 1, 57 S.Ct. 615, 81 L.Ed. 893; Memphis Natural Gas Co. v. Stone, supra. In the Blasius case, supra, the state court had in deference to decisions of the federal courts interpreting the Anti-Trust Act held invalid a tax statute. The federal court in reversing the judgment below and sustaining validity of the statute observed that the question involved was not the power of Congress to regulate interstate commerce, but whether exercise of state power must be deemed to be in conflict with the paramount authority. The Congress has power to regulate where interstate commerce is "affected" by the operation regulated. National Labor Relations Board v. Jones & Laughlin Steel Corp., supra.

The statutory provisions under consideration should be given a reasonable, natural and practical construction so as to effectuate the purpose of its enactment. C. A. Wagner Construction Company v. City of Sioux Falls, 71 S. D. 587, 27 N.W.2d 916. We should bear in mind that the Legislature was supplementing the sales tax and sought to correct inequalities between taxable transactions within the state and purchases of property outside the state and subsequently employed therein. It seems to me that the Legislature in providing the exemptions under consideration had in mind federal and constitutional limitations upon its power to tax and secondly what in a sense may be termed multiple taxation. The privileges taxed as before indicated are "use, storage, and consumption". If a taxpayer stores within the state supplies purchased outside the state in readiness to replace, repair, or otherwise maintain a transportation system or other instrumentality of commerce extending across state lines, the benefit of their use would not be confined to this state and in some instances the consumption might be wholly in a neighboring state. If we go beyond this, we impute an intent to the Legislature which is at odds with the language and purpose of the statute. The exemption applies not to personal property used or to be used in operating or maintaining "interstate commerce" which is a term of widest import, but relates to "interstate transportation or interstate commerce". If the Legislature

had in mind the whole field of interstate commerce of which transportation is only a part, it would not have referred to "interstate transportation". "Where two ·or more words of analogous meaning are employed together in a statute, they are understood to be used in their cognate sense, to express the same relations and give color and expression to each other." 50 Am.Jur., Statutes, § 247. It would, therefore, appear that the Legislature had in mind not all interstate commerce but the transportation or closely related feature of such commerce and intended to limit the tax exemption to personal properties used in operating or maintaining interstate transportation and communication systems or other instrumentalities directly connected with the flow of commerce across state lines. This construction harmonizes with the objects and purposes of the Act and does not impute to the Legislature an intention to favor local activities perhaps within the regulatory power of Congress, but when separately considered are intrastate and the exaction of a use tax from them would not impose cumulative tax burdens.

It appears undisputed that the printing press sought to be taxed is used in the business of printing a newspaper which "is peculiarly local and distinct from its circulation whether or not that circulation be interstate commerce." Western Live Stock v. Bureau of Revenue, supra. Appellant's activities are conducted locally and no other jurisdiction can repeat the tax. The trial court in my opinion arrived at a correct conclusion and the judgment below should be affirmed.