**In the Matter of the Appeal of JACK-PINE GYPSIES MOTORCYCLE CLUB, INC., and Black Hills Motor Classic, Inc., From the Decision of the Secretary of Revenue.**

**JACKPINE GYPSIES MOTORCYCLE CLUB & Black Hills Motorcycle Classic, Inc., Plaintiffs and Appellees,**

**v.**

**SOUTH DAKOTA DEPARTMENT OF REVENUE, Defendant and Appellant.**

**No. 15163.**

Supreme Court of South Dakota.

Argued Feb. 12, 1986.

Decided Nov. 5, 1986.

John T. Hughes, Sturgis, for plaintiffs and appellees.

John Dewell, Asst. Atty. Gen., Pierre, for defendant and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

WUEST, Chief Justice (on reassignment).

The South Dakota Department of Revenue (Department) appeals from a circuit court decision reversing an order of the South Dakota Secretary of Revenue (Secretary) which directed the Jackpine Gypsies Motorcycle Club, Inc. and the Black Hills Motorcycle Classic, Inc. (Clubs) to pay retail sales tax due on the ticket sales from their annual Black Hills Motorcycle Classic. We reverse.

The Clubs are nonprofit corporations that sponsor the Black Hills Motorcycle Classic and Rally (Classic). The Classic is a week-long series of motorcycle events held in Sturgis and the surrounding Black Hills of South Dakota. The Classic has been an annual event since 1941, and each August there are racing events and other sponsored festivities.

The Department contends that retail sales tax is due on the Club's ticket sales from the 1984 Classic. The Clubs insist that their receipts are exempt from tax under SDCL 10–45–13(3), which states in pertinent part:

There are specifically exempted from the provisions of this chapter and from computation of the amount of tax imposed by it, the gross receipts from the following: (3) Admissions to community operated celebrations and shows sponsored by a Chamber of Commerce or other similar nonprofit organization if the county, city or town in which the activity takes place officially sponsors the activity and no charge is made to the operators of the celebration or show for the use of county, city or town facilities or services[;]

The Secretary determined that Sturgis was not an official sponsor of the event and ruled that the Clubs were liable for sales tax. The Clubs refused to make their records available to the Department and instead appealed the Secretary's decision to the circuit court.

The circuit court reversed the Secretary's decision because the Department's interpretation of SDCL 10–45–13(3) holding there must be an official resolution to indicate the city's official sponsorship was too narrow an interpretation. The trial court held under the totality of the circumstances the city's support for the event constituted official sponsorship. The court found that the statute is ambiguous and fails to give notice to counties, cities or towns that intend to hold similar community operated celebrations, and all ambiguity should be resolved against the taxing authority.

■ On review, this court is not bound by any presumption that the circuit court decision was correct. We essentially review the agency decision on a fact question as did the circuit court. *Raml v. Jenkins Methodist Home*, 381 N.W.2d 241, 242 (S.D.1986); *State Division of Human Rights v. Miller*, 349 N.W.2d 42, 46 n. 2 (S.D.1984). We will uphold the ruling on a question of fact unless, in light of the entire record, the decision is clearly erroneous or we are left with a firm and definite conviction that a mistake has been made. *Raml*, 381 N.W.2d at 242–243; SDCL 1–26–37; *See also, Kienast v. Sioux Valley Co-op*, 371 N.W.2d 337, 339 (S.D.1986); *Stavig v. South Dakota Highway Patrol*, 371 N.W.2d 166, 168 (S.D.1986).

■ The Secretary of Revenue concluded that "no official sponsorship was ever presented to the city council of Sturgis nor was any action taken by vote of that body to effect an official sponsorship of the 1984 Classic," and therefore Sturgis was not an official sponsor of the Black Hills Motorcycle Classic. We hold the Secretary was not "clearly erroneous."

■ Specific exemptions from a tax will be construed in favor of the taxing power. *Application of Veith*, 261 N.W.2d 424 (S.D.1978). In order for appellees to be exempt from sales tax on the receipts from admissions to their events, the events must be officially sponsored by the City of Sturgis. The legislature amended SDCL 10–45–13(3) in 1983 by an Act to clarify certain

sales tax exemptions and the Act specifically required official sponsorship of the activity by the county, city, or town in which the event takes place. Sponsorship by the local chamber of commerce is no longer sufficient to qualify under this exemption. The change provides that the city must actually be a sponsor, and this implies a formal test of sponsorship.

Governing bodies of municipalities take official action through ordinances or resolutions. 62 C.J.S., Municipal Corporations § 160 (1955); 5 McQuillin, The Law of Municipal Corporations § 15.03 (3d ed. 1986); *See also, Baker v. Jackson,* 372 N.W.2d 142 (1985); SDCL 19-1-1 (defining and discussing ordinances and resolutions). A decision must be evidenced by a resolution, which in effect encompasses all actions of the municipal body other than ordinances. *McQuillin, supra* at §§ 15.02, 15.06. Statutes authorize such formal procedures for the purpose of assuring timely notice to the electors of the administrative decisions and determinations of the governing body and provide a full and fair opportunity to refer its decisions to the voters for approval or rejection. *Roush v. Town of Esmond,* 73 S.D. 406, 43 N.W.2d 547 (1950). The Secretary found that there was no such official action taken by the City.

A community can do many things to help support an annual event that takes place there without necessarily becoming an official sponsor of the event. It may act to insure the public safety or even take steps to insure the overall success of the event.

■ Sturgis budgeted for extra law enforcement and maintenance of public areas to regulate and insure public safety. It closed Main Street and published city and state regulations for similar reasons. Many of those actions were inherent municipal functions and although city officials cooperated to insure the event was an overall success, none of those actions made the City an official sponsor. Without a clear expression by the people of Sturgis by an initiated vote or a resolution by the city council, we should not hold they are.

In 1982, a resolution was initiated and defeated by the electors of Sturgis. According to the city attorney's explanation on the ballot:

The initiated resolution would require that the City of Sturgis discontinue leasing space to concessionaires during the period of the motorcycle events, refraining from closing Main Street or in any manner supporting or encouraging the said motorcycle events and that the City of Sturgis would notify Jackpine Gypsies and Black Hills Motorcycle Classic that it is opposed to future motorcycle events being held in the City of Sturgis.

The question was presented in a negative form and merely asked if the residents of Sturgis would have the City cease all support or encouragement for the event and that it oppose the event's returning to the City. It was a test to determine whether the relationship with the community had been strained by disturbances on city property to the point where the motorcycle rally would no longer be welcome in Sturgis. It made no mention of the city as an official sponsor.

If the city council passed a resolution declaring Sturgis an official sponsor, the measure could be tested by the voters by referendum. Obviously, there are strong feelings as to whether Sturgis should host the event at all, but its residents have settled for an unofficial accommodation. Sturgis has chosen to limit its relationship with the motorcycle rally without jeopardizing it completely.

A city can do much to support an event which draws people and dollars to the area. This involvement can help prevent the celebration from going elsewhere the following year. This event brings in nearly 40,000 people. The evidence does not show an official sponsorship by the City of Sturgis, and the Secretary was not "clearly erroneous" in so holding. We reverse.

FOSHEIM and MORGAN, JJ., concur.

HENDERSON, J., and HERTZ, Circuit Court Judge, Acting as a Supreme Court Justice, dissent.

SABERS, J., not having been a member of the court at the time this action was submitted to the court, did not participate.

HENDERSON, Justice (dissenting).

There are two simple issues presented by this appeal which involve two state statutes:

1. Did the City of Sturgis "officially sponsor" the 1984 Motorcycle Classic? *See* SDCL 10–45–13(3).

2. Was the decision of the Secretary of the Department of Revenue clearly erroneous in light of the entire evidence in the record? *See* SDCL 1–26–36(5).

It is obvious that the City of Sturgis "officially sponsored" the 1984 Motorcycle Classic. The City of Sturgis:

a. Has tolerated, condoned, encouraged, and permitted the Black Hills Motorcycle Classic and Rally since the year 1941;

b. Since 1941, has budgeted, as a line item, expenses for the Motorcycle Classic in its annual budget;

c. Through its Mayor, by sworn testimony, acknowledged over four decades of line budgeting for this event (the Classic);

d. Advertises and pays for advertisements concerning the Classic;

e. Hires extra police each year costing the taxpayers of Sturgis the sum of $25,000 by way of law enforcement to discipline and superintend the Classic;

f. Appropriates City funds to the street department for the maintenance of the racetrack and fairgrounds where (in part) the Classic ensues;

g. Closes off the main street to accommodate this one-of-a-kind event (not just in South Dakota but in the entire nation), all during the Classic, clearly indicating official sponsorship by the City fathers;

h. Charges the Sturgis Chamber of Commerce $1.00 to rent the City's property which is then used for the Classic; revenues for use of City property are then paid to the Chamber of Commerce by various individuals who utilize the premises;

i. Held a city-wide election in 1982 to determine if Sturgis *should continue to support or encourage the Classic* and *to determine if the City of Sturgis should notify the Jackpine Gypsies and Black Hills Motorcycle Classic whether the Classic should be continued.* A clear public opinion was expressed: Sturgis should continue to support, encourage, and continue the Classic. True, the measure (an initiated one) was cast in a negative interrogatory to the voters by stating should the City of Sturgis discontinue leasing space to concessionaires, refrain from closing Main Street, or in any manner "supporting, encouraging," etc.; however, the measure was defeated 1,454 against, 826 for. Reflected in settled record at 35–53. Hence, the message was clear: The voters expressed that they wanted, *officially*, the City of Sturgis to continue the motorcycle classic. It is fundamental that the voters are entitled to vote and that their expression at the polls should be heeded. Certainly, this was, and is, a significant fact in deciding that the City of Sturgis would continue its sponsorship.

Subsection (3) of SDCL 10–45–13 does not express what action a municipality must take in order to "officially sponsor" any event. Obviously, certain citizens of Sturgis who referred the vote on the City's involvement in the Classic believed that there was something official being done by the City in conjunction with the Classic. It appears the City Attorney and the City Council agreed that the matter was referable and an election was held. To totally ignore the involvement and the actions of the City of Sturgis and to take the position that only a paper resolution will suffice is to fly in the face of a reasonable construction of statutory provisions.

I agree with the rationale of Acting Justice Hertz. Accordingly, I dissent because (a) the exemption exists under SDCL 10–45–13(3) and (b) the decision of the Secretary of the Department of Revenue is clearly erroneous in light of the entire record per SDCL 1–26–36(5). The circuit court should be affirmed.

HERTZ, Acting Justice (dissenting).

I dissent.

I would hold that by adopting its 1984 budget, containing line item expenses for the Classic, that this is an official act of the City of Sturgis, and constituted "official sponsorship" of the Classic as required by SDCL 10–45–13(3).

The majority interprets the requirements of the words "official sponsorship" to mean an express resolution specifically declaring the sponsorship. This interpretation, in my opinion, is too narrow and not contemplated by the statute. The legislature, in passing this statute, simply intended that the city demonstrate its sponsorship by some official action on its part. There is nothing in the statute to indicate that sponsorship occurs only when a specific resolution has been introduced and passed, if such a requirement was intended, it could easily have said so.

The budget for 1984 for the City of Sturgis was never offered or received into evidence in the trial court, however, Robert Voorhees, the mayor, testified that, "As near as I can tell, we've [Sturgis] been wed to the thing [Classic] since history. Our budget's—you can go back as far as the budget goes [1941] and you can find where we've budgeted for the Classic." The 1984 budget was obviously the best evidence in this regard, but since the Mayor's testimony was received without objection, it became the next best evidence in the case.

The Mayor further testified that the city council is actively involved with the events of the Classic. The City sends out and pays for ads in motorcycle magazines relating to the rules applicable during the Classic. It informs motorcyclists of state law regarding such things as protective eyew-ear. The City hires extra police officers at an average cost of $25,000, and it appropriates monies to the Street Department for maintenance of the racetrack and fairgrounds. The Main Street is closed off during the Classic. While these activities may not be, in and of themselves, determinative of "official sponsorship," they are nevertheless consistent with the inclusion of the Classic as a budget line item which, in my opinion, is very persuasive evidence of the City's official sponsorship of the 1984 Classic. Simply stated, the actions of the City of Sturgis constituted substantial compliance with the "official sponsorship" mandate of SDCL 10–45–13(3). *Application of Leo's Bus Service, Inc.*, 342 N.W.2d 228, 230 (S.D.1984). *See also: Orme v. Lendahand Co.*, 128 F.2d 756 (D.C.Cir. 1942).

In *Application of Veith*, we wrote, "the rule that laws exempting property from taxation should be strictly construed in favor of the taxing power does not call for strained construction, but must always be reasonable and will not be applied to defeat the expressed intent of the legislature." 261 N.W.2d at 426. In *C.A. Wagner Construction Company v. City of Sioux Falls*, 71 S.D. 587, 594, 27 N.W.2d 916, 920 (1947), we held that the constitutional and statutory provisions for exemption from taxation or assessment are to be given a reasonable, natural, and practical construction to effectuate the purpose for which the exemption was created.

Any official action, though not in form a resolution, may be one in legal effect. 5 McQuillin, *The Law of Municipal Corporations*, § 15.06, *citing Lindahl v. Independent School District No. 306*, 270 Minn. 164, 133 N.W.2d 23, 26 (1965). Thus, although the adoption of a line item budget for the Classic lacks the formal attributes of a specific resolution, this deficiency of form is not and should not be fatal to the exemption claim.

The majority opinion leans too far to the hyper-technical in order to invalidate the exemption claim. The City's complete sup-

port of the Classic has been clearly demonstrated from the record before this court. By applying "a reasonable, natural, and practical" construction to SDCL 10–45–13(3), substantial compliance therewith has been adequately shown. Accordingly, I would affirm the trial court and hold that the City of Sturgis, by adopting a line item budget, "officially sponsored" the 1984 Classic. The City's action was clearly within the spirit and intent of the legislature and the result does not call for a "strained construction" in order to justify the exemption.